Mary E. MURPHY, individually, and as trustee for the heirs of Gary K. Murphy, decedent, Appellant,

v.

MILBANK MUTUAL INSURANCE COMPANY, Kemper Insurance Companies, Respondents.

Nos. C1–85–88, C7–85–158.

Court of Appeals of Minnesota.

June 4, 1985.

Review Granted July 26, 1985.

David C. Sandberg, Forest Lake, for appellant.

Sally A. Holmgren, Golden Valley, for Milbank Mut. Ins. Co.

Mark L. Pfister, Minneapolis, for Kemper Ins. Companies.

Heard, considered and decided by POPO-VICH, C.J., and SEDGWICK and RANDALL, JJ.

## OPINION

SEDGWICK, Judge.

As the result of a wrongful death action, judgment was entered against defendant Milbank Mutual Insurance Company in the amount of $100,000 plus $3,925 prejudgment interest. A $15,000 judgment was entered against defendant Kemper Insurance Companies. Appellant Mary Murphy, decedent's spouse, and appellant Milbank Mutual Insurance Company appeal this judgment. Affirmed in part, reversed in part and remanded.

## FACTS

Gary Murphy died as a result of injuries sustained in a car/truck collision on October 29, 1977 in Iowa. Appellant Mary E. Murphy is decedent's surviving spouse, parent and guardian of his daughter and duly appointed trustee for his heirs and next-of-kin.

Gary Murphy, a Minnesota resident, was driving a semi-tractor trailer owned by United States Industries, Inc., his employer. The tractor was registered in Minnesota and insured by defendant American Motorists Insurance Company (Kemper Insurance Companies). The policy issued April 1, 1977, had bodily injury limits of $500,000 and no underinsured motorist coverage. The uninsured motorist coverage had "statutory" limits. Kemper asserts this means limits of $25,000. Appellant argues that the limits of uninsured motorist coverage are equal to the residual liability limits of $500,000.

Gary and Mary Murphy owned two family cars registered in Minnesota and insured by defendant Milbank Mutual under policies issued in Minnesota. The amount of uninsured coverage with Milbank was $50,000 per vehicle.

The other motorist was an Iowa resident. His car was registered in Iowa and had $10,000 in bodily injury liability coverage, $20,000 per occurrence. These limits were in accord with Iowa law. The $10,000 limits of this policy have been paid to Kemper in settlement of its subrogation claim.

Mary Murphy brought an action against Kemper insurance company to determine whether she was entitled to uninsured motorist benefits. By partial summary judgment the trial court determined Mary was entitled to uninsured motorist benefits. The supreme court affirmed. *Murphy v. Milbank Mutual Insurance*, 320 N.W.2d 423 (Minn.1982).

Mary then filed a Demand for Arbitration claiming uninsured motorists benefits against Milbank Mutual and Kemper. No claim for underinsured coverage was made.

The arbitrators found that plaintiff's damages were $800,000.00 with plaintiff 30% at fault and the Iowa motorist 70% at fault. Application of comparative negligence resulted in damages of $560,000. The arbitrators reduced the award by $10,000 previously paid in no-fault survivors benefits. The arbitrators denied an offset for the $10,000 of liability coverage available to the Iowa driver.

The trial court confirmed the arbitration award, but after various rulings entered judgment against Milbank Mutual Insurance Company in the amount of $100,000, plus $3,925 in prejudgment interest, and against Kemper in the amount of $15,000, plus $588.75 in prejudgment interest.

## ISSUES

1. Was Kemper required by Minn.Stat. § 65B.49, subd. 6(f), to offer additional uninsured motorist coverage equal to its liability limits to $500,000?

2. Is underinsured motorist coverage applicable when there has been a determination that uninsured motorist coverage applies because the tortfeasor's liability limits of $10,000 are not legally sufficient under Minnesota law?

3. Should the uninsured motorist coverages of all trucks garaged in Minnesota be stacked where the record is unclear as to

how the premiums on a commercial policy are computed?

4. Should the amount of uninsured motorist coverage be reduced by the amount of liability coverage on the other car?

5. Should the amount of uninsured motorist coverage be reduced by worker's compensation benefits received?

## ANALYSIS

1. Minn.Stat. § 65B.49, subd. 6(f) (1977) (repealed 1980), effective on the date of the accident, required that an insurer "shall offer" uninsured motorist coverage equivalent to the residual liability limits, in this case $500,000. Kemper claims it was not required to offer matching uninsured motorist coverage until its renewal, April 1, 1978, even though the statute became effective May 27, 1977.

The trial court agreed. It held this statute did not apply to the policy between Kemper and decedent's employer because Minn.Stat. § 65B.49, subd. 6(f), was not effective until May 27, 1977, two months after the Kemper policy was entered into. Therefore, the trial court found Kemper had no statutory duty to offer supplemental coverage until April 1, 1978, the next renewal date.

This conclusion appears supported by *Owens v. Federated Mutual Implement and Hardware Insurance Co.*, 328 N.W.2d 162 (Minn.1983), where the court refused to apply a recently enacted statute to a policy which was in existence before the effective date of the statute. However, *Owens* does not deal with the situation where the policy is amended after the effective date of an applicable statute and before the policy's next renewal.

*Ritchie v. U.S. Auto Ass'n.*, 363 N.W.2d 851 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. May 24, 1985), deals with this circumstance. It held that an insurer must offer uninsured motorist coverage without waiting until the next renewal date if the policy is amended before its renewal date and a statute requiring such an offering has come into effect since the original issuance or last renewal of the policy.

Between the policy's renewal in April 1977 and the accident in October 1977 the policy was amended at least two times. Before the accident, Kemper had frequent contact with its insured, decedent's employer. This conduct contradicts Kemper's claim that it would have been commercially too burdensome to make an offer of additional optional coverages between April 1977 and October 1977, the date of the accident.

■ Kemper argues that requiring it to offer additional coverage before the next renewal date would involve enormous expense and that the legislature did not intend such an unreasonable construction. Requiring insurance companies to offer these optional coverages, does not mean insurance companies will have to pay under both the uninsured and underinsured provisions. These provisions are mutually exclusive.

Respondents' concern regarding commercial unreasonableness and expense to insurance companies is misplaced. This decision affects only those contracts amended between their renewal dates and only those subject to Minn.Stat. § 65B.49, subd. 6, which was repealed in 1980.

■ The trial court's findings that requiring insurance companies to offer the optional coverage when amending a policy would be commercially unreasonable and involve enormous expense are not based on evidence and are beyond the scope of a motion for summary judgment. Because Kemper amended the policy several times before the accident, it was required under *Ritchie* to offer additional uninsured and underinsured motorist coverage pursuant to Minn.Stat. § 65B.49, subd. 6. Therefore, the additional $500,000 uninsured coverage must be implied as a matter of law.

■ 2. Appellants claim the trial court erred in denying a motion to amend the complaint to include a claim for underinsured coverage. Uninsured coverage and underinsured coverage are mutually exclu-

sive, *Berg v. Western National Mutual Insurance Co.*, 359 N.W.2d 726, 729 (Minn. Ct.App.1984), *pet. for rev. denied* (Minn. Mar. 29, 1985).

Uninsured coverage is applicable where a car involved in an accident is without insurance or, as in this case, is insured for less than the legal liability limits under Minnesota law.

■ Underinsured coverage is applicable where the tortfeasor carries insurance which is legally sufficient but inadequate to cover all damages incurred. Here, the tortfeasor's insurance was not legally sufficient under Minnesota law. There are no arguments or facts adequately distinguishing this case from *Berg.* Therefore, the trial court properly determined there was no legal basis for a claim for underinsured coverage and such coverage is not applicable.

3. The trial court denied stacking because the policy was a commercial policy, Gary Murphy did not pay the premiums, other states have not permitted stacking on a commercial policy, and it would violate the "closeness to the risk" doctrine.

The court of appeals allowed stacking on commercial policies where the premium was figured on a per vehicle basis. *Boroos v. Roseau Agency, Inc.*, 345 N.W.2d 788 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Dec. 24, 1984). Here, the policy provides that "if * * * the number of insured vehicles * * * changes, * * * the premium shall be adjusted in accordance with the manuals in use by the company."

■ Since nothing in the record shows otherwise, we accept the wording of the policy that the premium was computed on a flat composite rate. Therefore, stacking is not appropriate.

■ The fact that Gary Murphy did not personally pay the premium on the Kemper policy is irrelevant. Stacking is permitted where the claimant was not the person paying the premium. *Wasche v. Milbank Mutual Insurance Co.*, 268 N.W.2d 913 (Minn.1978). The issue is not who paid the premium, but rather who is

an "insured" under the policy. Under the Kemper policy the definition of an insured included "any other person while occupying an insured highway vehicle * * *." Gary Murphy was clearly an insured under this definition.

■ The trial court also said that stacking would violate the "closeness to the risk" rule. This rule has nothing to do with whether stacking is appropriate. It simply dictates the order in which coverages should be stacked. *Integrity Mutual Insurance Co. v. State Auto and Cas. Underwriters Insurance Co.*, 307 Minn. 173, 239 N.W.2d 445 (1976).

■ The Kemper coverage on the truck involved in the accident most closely contemplates the risk of injury to persons in that vehicle. Therefore, the uninsured coverage on the truck is primary. *Id.* Because there is no record that shows premiums paid to Kemper on a per vehicle basis, there can be no stacking on other trucks garaged in Minnesota and insured on the Kemper policy.

■ Appellant can then look to the Milbank policy, where decedent is also an insured, and stack uninsured motorist coverages on those vehicles to the extent of her loss.

■ 4. The trial court erred in allowing a set-off against Kemper's uninsured motorists limits for the Iowa driver's $10,000 liability coverage. Kemper received the $10,000 in payment of its subrogation claim and is not entitled to claim a set-off. In *Spira v. American Standard Insurance Co.*, 361 N.W.2d 454 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. Mar. 29, 1985), this court held that an insurer is not entitled to a set-off in the amount of an uninsured tortfeasor's liability limits where no duplicate recovery to the insured will occur. Appellant Murphy did not receive the $10,000 from the uninsured tortfeasor.

5. The last issue is whether the trial court erred in refusing to reduce the uninsured motorist insurer's liability by the amount of the worker's compensation bene-

fits appellant received. Respondent insurance companies assert that if appellant gets both uninsured motorist benefits and workers' compensation benefits, appellant will be receiving a double benefit. This, respondents contend, violates Minn.Stat. § 65B.42(5) which provides that one purpose of the no-fault act is to avoid double recovery.

This concern was recently addressed by this court in *Fryer v. National Union Fire Insurance, Co.*, 346 N.W.2d 353, (Minn.Ct. App.1984), *rev'd on other grounds*, 365 N.W.2d 249 (Minn.1985), where the court said:

> If the purpose of the statute is to be fulfilled, the injured party is entitled to the proceeds of his uninsured-motorist coverage within the limits of his own policy coverage free from any reductions which would not be available in a suit against an insured tortfeasor.

*Id.* at 358. (*quoting Brunmeier v. Farmers Insurance Exchange*, 296 Minn. 328, 336, 208 N.W.2d 860, 865 (1973).

 Since *Fryer* and the cases cited therein are not adequately distinguishable, the trial court properly decided this issue.

During the eight years since this accident, it has never been disputed that decedent was a named insured under two insurance policies, yet his spouse and child have received less than $100,000, and that amount is comprised of worker's compensation benefits and basic economic loss benefits from decedent's employer. Meanwhile, the dispute between the insurance companies has brought them to the Supreme Court once, back to the trial court, and now the Court of Appeals. Despite Minn.Stat. § 549.09, the interest on these moneys can only be awarded from July 1, 1984.

## DECISION

We affirm the trial court's decision: 1) confirming the arbitration award; 2) that uninsured and underinsured motorist coverages are mutually exclusive; 3) that uninsured motorist coverages cannot be stacked on other trucks garaged in Minnesota and

covered by the Kemper commercial policy; 4) denying a set-off for the amount of worker's compensation benefits received; 5) reducing the amount of the award by $10,000 paid in no fault survivor benefits; and 6) that the policies of insurance on decedent's personal vehicles be stacked.

We reverse the trial court's decision: 1) that Kemper was not required to offer uninsured motorist coverage equal to its residual liability limits of $500,000; and 2) that the judgment be entered for an amount less than $550,000.

Therefore, appellant is entitled to $550,-000. Consistent with the closeness to the risk doctrine, Kemper is liable for the first $500,000 and Milbank's policies should be stacked to cover the remaining $50,000. Appellant Murphy is also entitled to prejudgment interest on $550,000 from July 1, 1984 to date of judgment pursuant to Minn. Stat. § 549.09 (1984). We remand for entry of judgment consistent with this decision.