295 S.C. 538 (1988)
370 S.E.2d 85
FIREMAN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY, Appellant
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Glenn A. Mullins and Joan C. Locklear, of whom Glenn A. Mullins and Joan C. Locklear are Respondents.
22880
Supreme Court of South Carolina.
Heard January 20, 1988.
Decided June 6, 1988.
*539 Theron G. Cochran and William A. Coates, Love, Thornton, Arnold & Thomason, Greenville, for appellant.
Eugene C. Covington, Jr., of Foster, Covington & Patrick, Greenville, for respondents.
Heard Jan. 20, 1988.
Decided June 6, 1988.
FINNEY, Justice:
Appellant, Fireman's Insurance Company of Newark, New Jersey (Fireman's), filed a declaratory judgment action to determine the amount of uninsured and/or underinsured *540 motorist benefits and medical payments to which respondents Glenn A. Mullins (Mullins) and Joan C. Locklear (Locklear) were entitled under an insurance policy issued by Fireman's to Mullins. The case was submitted to the trial judge without a jury on stipulated facts. The trial court permitted stacking of underinsured, uninsured and medical benefits. We reverse and remand for proceedings consistent with this opinion.
In December 1984, Earl Lewis Gentry (Gentry), a Florida resident, was operating a vehicle on U.S. 25 Bypass in Greenwood, South Carolina. He was involved in a collision with an automobile driven by Mullins and owned by Locklear, a passenger in the car. Mullins and Locklear sustained injuries and damages and filed claims against Gentry.
Gentry was insured with Coronet Insurance Company under a Florida automobile liability policy which provided maximum liability limits of ten thousand ($10,000) dollars per person and twenty thousand ($20,000) dollars per accident for bodily injury. The policy complied with the liability limits mandated by Florida law. However, it did not meet the liability limits of fifteen thousand ($15,000) dollars per person and thirty thousand ($30,000) dollars per accident required under S.C. Code Ann. § 56-9-820 (1976).
Locklear had liability coverage on her vehicle through State Farm Mutual Insurance Company (State Farm). The policy provided uninsured motorist coverage with maximum limits of $15,000 per person and $30,000 per accident. State Farm paid its $30,000 limit and is no longer a party to this action.
Mullins had an automobile liability policy with Fireman's insuring his three vehicles. The policy is a $35,000 single limits liability insurance policy and provides "uninsured (and underinsured)" coverage in the amount of $35,000 per accident. The declaration sheet of the policy provided "medical payments" coverage in the amount of $3,000 for each person.
The trial court ruled that Fireman's pay uninsured motorist coverage to Mullins in the amount of $45,000 ($15,000 per vehicle) and underinsured coverage to Mullins in the amount of $35,000 (the amount of policy coverage). The court further ordered that Fireman's pay uninsured *541 motorist coverage to Locklear in the amount of $45,000 dollars ($15,000 per vehicle) and underinsured motorist coverage to Locklear in the amount of $45,000 ($15,000 per vehicle). The trial court also ruled that Locklear and Mullins were entitled to $9,000 ($3,000 per vehicle) in medical payments coverage. In short, the trial court permitted Mullins to stack his uninsured policy at $15,000 per vehicle, but did not allow Mullins to stack underinsured, limiting underinsured coverage to the policy limit of $35,000. The trial court permitted Locklear to stack uninsured and underinsured at $15,000 per vehicle, and both Mullins and Locklear were allowed to stack medical coverage.[1] We disagree.

I.
Fireman's argues that uninsured and underinsured coverage are mutually exclusive and, therefore, the trial court erred in awarding Mullins and Locklear uninsured and underinsured payments.
Whether uninsured and underinsured coverage are mutually exclusive is of novel impression before this Court. It is the opinion of the Court that an individual may be either uninsured or underinsured, but not both. See I. Schermer, Automobile Liability Insurance, § 35.10 at 35-45 (1985). As Schermer explains in his treatise on motor vehicle insurance:
Uninsured motorist coverage refers to a motorist who either does not carry any liability coverage applicable to his motor vehicle or who carries liability coverage with limits less than those required by a state's financial responsibility law. Underinsured motorist coverage refers, on the other hand, to a motor vehicle covered by

*542 complying liability limits which are not adequate to compensate the ... insured for his damages.
Id. (footnote omitted). See also Gambrell v. Travelers Insurance Companies, 280 S.C. 69, 310 S.E. (2d) 814 (1983).
On the other hand, respondents contend Gambrell held that uninsured and underinsured are not mutually exclusive because of the following language utilized by the Court:
One buys uninsured motorist coverage to protect himself in case an at-fault driver has no liability coverage or has less liability coverage than required by statutes. Over and above uninsured coverage, he may procure underinsured motorist coverage to protect himself in case an at-fault driver has liability coverage but the amount is insufficient to cover the damages sustained. Uninsured motorist coverage is required by law. S.C. Code Ann. § 56-9-830 (1976). Accordingly, optional underinsured coverage would always be over and above either the at-fault driver's liability coverage or over and above the policyholder's own uninsured motorist coverage. This is the protection provided for the additional premium paid for the underinsured motorist coverage.
Gembrell, 280 S.C. at 72, 310 S.E. (2d) at 816.
We do not interpret this language to imply that the terms uninsured and underinsured are not mutually exclusive. The language employed in Gambrell is intended to comport with the classic definition of uninsured and underinsured coverage. In fact, the Court in Gambrell was not faced with the novel question of whether one could collect both uninsured and underinsured as a result of a collision with one tortfeasor and, thus, did not decide whether the terms are mutually exclusive.
Our conclusion that underinsured and uninsured coverage are mutually exclusive under the facts of this case is further supported by a reading of S.C. Code Ann. § 56-9-831 (1978 & Supp. 1986) (repealed by 1987 Act. No. 155 § 25, Jan. 1, 1988). The statute states in pertinent part:
Automobile insurance carriers shall offer, at the option of the insured, uninsured motorist coverage up to the limits of the insured's liability coverage in addition to *543 the mandatory coverage prescribed by § 56-9-830. Such carriers shall also offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at fault insured or underinsured motorist.
Id.
We read the statute as allowing the purchase of extra insurance to cover two separate rate contingencies. Additional uninsured coverage applies when the at-fault motorist lacks liability insurance with minimum statutory limits. 2 A. Widiss, Uninsured and Underinsured Motorist Insurance, § 31.3 (1987). Underinsured coverage applies when the at-fault motorist has the required minimum liability coverage, but such coverage is insufficient to fully compensate the insured for damages sustained. 3 R. Long, The Law of Liability Insurance, § 24.22 (1987). Therefore, the two types of coverages are mutually exclusive.
The Minnesota Supreme Court addressed the question of whether uninsured and underinsured coverage are mutually exclusive under the Minnesota No-Fault Act. See Murphy v. Milbank Mutual Insurance Co., 368 N.W. (2d) 753 (Minn. Ct. App. 1985); aff'd in part, rev'd in part and reman'd, 388 N.W. (2d) 732 (Minn. S.Ct. 1986). In Murphy the Minnesota Supreme Court found that Minnesota's No-Fault Act, which combines uninsured and underinsured protection into one mandatory coverage, simultaneously permits both underinsured and uninsured coverage. The Court found the statutory language describing each coverage to be ambiguous and, thus, concluded that the legislature intended duplicative coverage. Id. However, the Court held "if the No-Fault Act allows duplicative coverages, it is clear that the act does not intend duplicate recoveries." Id. at 737.
While the Minnesota Court held that the statute's clear language permitting duplicate coverage precluded a finding of mutual exclusivity, we find persuasive the Court's conclusion that duplicative recoveries are prohibited. To the contrary, the law in South Carolina is clear that underinsured coverage and uninsured coverage are mutually exclusive. S.C. Code Ann. § 56-9-831 (1978 & *544 Supp. 1986) (repealed by 1987 Act. No. 155 § 25, Jan. 1, 1988). The tortfeasor's insurance coverage in this case was not legally sufficient under South Carolina law and, therefore, the uninsured motorist provision applied. S.C. Code Ann. § 56-9-810 (1977). Since the tortfeasor was uninsured in South Carolina, he could not simultaneously qualify as an underinsured possessing a policy which did not meet the required basic liability coverage. See S.C. Code Ann. § 56-9-831 (1978 & Supp. 1986) (repealed by 1987 Act. No. 155 § 25, Jan. 1, 1988), and Schermer, supra. Accordingly, we conclude that Locklear and Mullins are not entitled to underinsured indemnification, but only uninsured reparation under Section 56-9-810.

II.
Fireman's contends the trial court erred in ruling that Mullins was entitled to stack uninsured coverage of $15,000 per vehicle for a total of $45,000.
In determining whether Mullins was entitled to stack his uninsured coverage, we must first examine the appropriate statutory provision. Section 56-9-831 provides in pertinent part:
If ... an insured ... is protected by uninsured or underinsured motorist coverage in excess of the basic limits, the policy shall provide that the insured is protected only to the extent of coverage he has on the vehicle involved in the accident. If none of the insured's or named insured's vehicles is involved in the accident. coverage is available only to the extent of coverage on any one of the vehicles with excess or underinsured coverage. Coverage on any other vehicle shall not be added to that coverage.

S.C. Code Ann. § 56-9-831 (1978 & Supp. 1986) (repealed by 1987 Act. No. 155 & 25, Jan. 1, 1988). (Emphasis added.)
There are two classes of insureds under Section 56-9-831. The first class, or Class I, applies when an insured or named insured has a vehicle in an accident. The second class, or Class II, insured is an insured whose vehicle(s) was not involved in the accident. Preliminary, the issue to be resolved is within which class is stacking permitted. This *545 Court first addressed this issue in Gambrell and Garris v. Cincinnati Insurance Co., 280 S.C. 149, 311 S.E. (2d) 723 (1984). It held that Section 56-9-820 allowed stacking of underinsured motorist coverage up to the insured's maximum liability coverage. S.C. Code Ann. § 56-9-820 (1976). However, where the insured is a member of the second class (none of the insured's vehicles is involved in the accident), underinsured motorist recovery is limited to the extent of coverage on one vehicle with underinsured motorist coverage. Underinsured coverage in this instance on any other vehicle under the policy could not be stacked or added to that coverage.[2]See Garris, 311 S.E. (2d) at 727; Gambrell, 310 S.E. (2d) at 814.
The decisions in Garris and Gambrell involved the issue of underinsured stacking. It was not until this Court's ruling in Nationwide Mutual Insurance Co. v. Howard, 288 S.C. 5, 339 S.E. (2d) 501 (1985), that we addressed the issue of stacking uninsured motorist coverage. In Nationwide, we held that stacking of uninsured motorist coverage was allowed when the insured comes within Class I  an insured or named insured has a vehicle involved in an accident.
In this case Mullins, the named insured under Fireman's policy, was driving Locklear's automobile when the collision occurred. Because none of Mullins' vehicles was involved in the accident, he is a Class II insured under the statute. As a consequence of Mullins being a Class II insured, he is not permitted to stack uninsured coverage.
Nonetheless, the trial court determined that Mullins was entitled to stack uninsured coverage. In reaching this determination, the trial court stated: "I do not interpret the intent of the legislature here to prohibit stacking of all uninsured coverages. I interpret the word `excess' to mean excess uninsured coverage, not all uninsured coverage." The applicable part of Section 56-9-831 states: "If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage *546 on any one of the vehicles with the excess or underinsured coverage." S.C. Code Ann. § 56-9-831 (1978 & Supp 1986) (repealed by 1987 Act. No. 155 § 25, Jan. 1, 1988). The trial court mistakenly concluded that Fireman's single limits policy was not an excess policy. We do not agree with the trial court that a $35,000 policy merely incorporates the basic limits of 15/30/5 into one number. Under a basic limits policy, recovery is permitted to the extent of $15,000 per person for bodily injuries or $30,000 per accident; while under Fireman's policy, the amount of recovery is $35,000 per person or $35,000 per accident if more than one person is injured.
Accordingly, Mullins cannot stack uninsured benefits as a Class II insured; and because this is an excess policy, he is only entitled to $35,000 uninsured coverage as set forth in the policy.

III.
Fireman's next contends the trial court erred in ruling that Locklear was entitled to stack both uninsured and underinsured coverage in the amount of $45,000 each because Locklear was a contractual insured and Fireman's policy limited the maximum amount payable from a single accident to $35,000.
The Fireman's policy provided uninsured coverage to Locklear. Part 6 of the policy, which defines uninsured and underinsured motorist coverage, provides in Section A(d) that a covered person who has uninsured motorist coverage includes: "a person occupying any other motor vehicle operated by ... (the named insured, Mullins)." Locklear was a passenger in the car operated by Mullins. Therefore, under the policy's provisions, Locklear is a contractual insured for the uninsured motorist endorsement. We agree with the trial court, contrary to the argument of Fireman's, that Locklear is not entirely a "gratuitous insured." The contract executed between Mullins and Fireman's provides that anyone occupying a vehicle operated by the insured Mullins is protected under the policy provision. Indeed, Mullins bargained for this policy provision which extended coverage to any person occupying a vehicle operated by him who incurred costs or suffered a loss resulting *547 from bodily injuries caused by an uninsured motorist. Mullins' purchase and retention of the insurance policy contractually entitles him to the benefits of the bargain or contract. However, we disagree with the trial court's conclusion that Locklear is a Class I insured under Section 56-9-831 and, therefore, entitled to stack uninsured coverage. As defined in S.C. Code Ann. § 56-9-810 (1977), a Class I insured for purposes of Section 56-9-831 is the "named insured in Fireman's policy is Mullins, and Locklear is neither his spouse nor his relatives residing in his household while in a motor vehicle or otherwise ..." The named insured in Fireman's policy is Mullins, and Locklear is neither his spouse nor his relative. Locklear also was not a "guest in such vehicle to which the policy applies" as stated in Section 56-9-810 because she was a passenger in her own car, which is not a vehicle to which the Fireman's policy applies. Because the policy precludes stacking and Locklear is not a statutory insured as per the uninsured motorist laws of South Carolina, Section 56-9-820, et seq., she may not stack uninsured coverage.
Locklear is subject to the Fireman's policy's contractual provisions, which provides maximum coverage to an uninsured motorist in the amount of $35,000. This policy coverage is valid and enforceable. See, e.g., Kraft v. Hartford Insurance Companies, 279 S.C. 257, 305 S.E. (2d) 243 (1983) (this Court approved the contractual extension of liability coverage for the operation of non-owned vehicles, which was not required by statute).

IV.
Fireman's asserts that Locklear is not entitled to any payment under the Fireman's policy or, in the alternative, that Mullins and Locklear must split the $35,000 payment because the policy provides that the maximum payment for all claims from a single accident is $35,000.
As previously stated, Mullins is entitled to Fireman's uninsured coverage protection policy by virtue of being statutorily insured under the policy provisions; and Locklear, as an injured occupant, is contractually entitled to the coverage provided by the $35,000 single limits policy.
Nevertheless, we do not find it necessary to address Fireman's *548 allocation of insurance proceeds argument. Whether Locklear is entitled to partial or total indemnification is a matter for the trial court upon remand based upon the evidence and extent of damages sustained by each. Accordingly, this Court concludes that Fireman's maximum liability under its single limits uninsured policy provision is $35,000.

V.
Finally, appellant argues that the trial court erroneously ruled that Mullins and Locklear were each entitled to $9,000 when Part 5E of the policy limits medical payment to $3,000 per person. Fireman's policy provisions governing medical payments states in part:
The most we will pay for each person injured in a single accident is the Limit of Coverage for your medical payments shown on the Coverage Data Page.
However, a separability clause contained in this provision provides that "[w]hen two or more vehicles are insured under this policy, the coverage applies separately to each."
It is our opinion that the separability clause contained in Fireman's medical payment coverage section is similar to the separability clause found in Kraft v. Hartford Insurance Companies, 279 S.C. 257, 305 S.E. (2d) 243 (1983). In Kraft, this Court held that medical payments could be stacked because the separability clause in the policy treated each vehicle as if insured under a separate policy. Accordingly, we conclude that the circuit court properly ruled that Mullins and Locklear, can stack medical payments coverage, resulting in an award of $9,000 each.
For the reasons set forth herein, we find that the trial court erred in ruling that Mullins and Locklear were entitled to both uninsured and underinsured coverage. Under the law and the insurance contract executed between Mullins and Fireman's, this Court concludes that Fireman's maximum liability to Mullins and Locklear under its uninsured motorist policy provision is $35,000. We further conclude the court properly ruled that Mullins and Locklear could stack medical coverage and are entitled to a maximum of $9,000 each in medical payments from Fireman's.
*549 Affirmed in part, reversed in part, and remanded.
GREGORY, CHANDLER, JJ., and Acting Associate Justice LAWRENCE E. RICHTER, Jr., concur.
NESS, C.J., dissenting in separate opinion.
[fn1]The following is a summary of the trial court's ruling:

 MULLINS LOCKLEAR
UNINSURED MOTORIST $45,000 $45,000
 ($15,000/vehicle) ($15,000/vehicle)
UNDERINSURED MOTORIST $35,000 $45,000
 (one vehicle) ($15,000/vehicle)
MEDICAL PAYMENTS $ 9,000 $ 9,000
 ($ 3,000/vehicle) ($ 3,000/vehicle)

NESS, Chief Justice (dissenting):
I dissent and would affirm the opinion of the trial court.

I.

Mutual Exclusivity of Underinsured and Uninsured Motorist Coverage
Neither the Majority Opinion nor the Appellant cites any contractual or statutory provision which specifically provides that underinsured and uninsured motorist coverage are mutually exclusive. On the contrary, this conclusion is reached by the Majority by interpreting the definition of underinsured motorist coverage as found in the statute on the date of this incident.[1] The Majority reasons that in the majority of cases, an at fault driver will not satisfy both the uninsured and underinsured definitions. Normally, he will have no insurance and therefore be uninsured, or he will have insufficient liability insurance and will therefore be underinsured. Accepting this premise as sound for the sake of argument, the Majority Opinion fails to focus on the peculiar facts of this case.
There is no disagreement that the at fault driver in this case meets the statutory definition of an uninsured motorist, not because he had no insurance, but because his liability insurance was less than that required by § 56-9-820, South Carolina Code of Laws, 1976.[2] Our Legislature has defined an "uninsured motorist vehicle" as any vehicle which is not insured in at least the minimum liability limits. § 56-9-20(16), South Carolina Code of Laws, 1976. The Majority defines an underinsured motorist endorsement as "coverage *550 in the event that damages are sustained in excess of the liability limits carried by an at fault insured or underinsured motorist." § 56-9-831, South Carolina Code of Laws, 1976 as amended. (Emphasis added.) The distinguishing fact overlooked and avoided by the Majority is that the at fault driver in this case had liability coverage and also meets the legislative definition of an underinsured motorist.
The statute does not require a specific amount of liability coverage to trigger the underinsured motorist endorsement. The statute does not provide that under every conceivable fact situation, an at fault motorist must be either an uninsured or an underinsured motorist. The Appellant's policy contains no definition of an underinsured motorist and likewise no clause defining the two are mutually exclusive. In fact, as the Majority correctly noted, the declaration page of the Appellant's policy classifies the coverage as "uninsured (and underinsured)" coverage; not "uninsured (or underinsured)" coverage. (Emphasis added.)
It is not the function of this Court to legislate or rewrite contractual agreements. The Majority may be right in concluding that in most cases an at fault driver cannot simultaneously meet the legislative definitions of both an uninsured and underinsured motorist. Albeit unusual, under the peculiar facts of this case, the at fault driver does clearly meet both definitions. The fact that this is unusual and may never happen again, does not give this Court the prerogative to rewrite the legislation.
I agree with the general rule espoused by the Majority. I cannot agree that there can never be exceptions to the rule. The legislative definition of uninsured and underinsured motorist coverage are almost always, ninety-nine.nine percent of the time, mutually exclusive. The peculiar facts of this case establishes that few rules of law are absolute. I would simply hold that under the facts of this case, applying the law applicable at the time of this occurrence, the at fault driver met the legislative definition of both uninsured and underinsured motorist coverage. Finding no statutory or contractual language which would prohibit this atypical situation, I would agree with the trial judge that the Respondents are entitled to both coverages.

*551 III and IV[3]

Stacking: Contractual Limitations
My disagreement with Section III and IV of the Majority Opinion follows my prior reasoning: The Majority has misapplied sound principles to reach an illogical result. These sections involve Ms. Locklear who was a passenger in her own vehicle but who under the terms of the Appellant's policy was a defined insured for uninsured and underinsured coverages. The majority mistakenly concludes that Ms. Locklear is neither a Class I nor a Class 2 insured and not a "statutory" insured thus precluding stacking. Likewise, the Majority has erroneously reasoned that the contractual extension of "insurability" to Ms. Locklear justifies imposition of the policy's contractual cap on uninsured motorist coverage. Most perplexing is the Majority's unassisted remand to the trial court to somehow determine a fair allocation of the $35,000.00 single limits uninsured motorist endorsement between Locklear and Mullins. It is this last item which produces in my opinion, a clearly illogical result.
Under the Majority reasoning, Locklear's uninsured motorist coverage can be reduced below the statutory minimum because she is a "defined" insured rather than a "statutory" insured which we have held to include the named insured, his spouse and relatives residing in his household. American Interinsurance Exchange v. Diamond, 268 S.C. 35, 231 S.E. (2d) 304 (1977). Unquestionably, Mullins is a statutory insured inasmuch as he is the named insured. As a statutory insured, clearly Mullins' uninsured motorist endorsement cannot be contractually reduced below that required by our statutes. Nationwide Mutual Insurance Company v. Howard, 288 S.C. 5, 339 S.E. (2d) 501 (1985). Yet in Part IV of the Majority Opinion, the trial court is directed to allocate the $35,000.00 single limit uninsured motorist endorsement between Locklear and Mullins based on the extent of damages sustained by each. The Majority specifically contemplates that this could entitle Locklear to "partial or total indemnification." (Emphasis added.) Not knowing the relative extent of damages, Mr. Mullins' uninsured *552 motorist coverage could conceivably be reduced below $15,000.00 and will quite certainly be reduced below $35,000.00. Either eventuality will effectively reduce the coverage legislatively required to Mr. Mullins as a statutory insured. Hence, the Majority, by attempting to apply a contractual restriction to a contractual insured has in result applied a contractual restriction to a statutory insured which is clearly contrary to public policy.
The fallacy in the Majority's reasoning begins with the classification of Ms. Locklear. In Nationwide v. Howard, supra, we attempted to clarify any uncertainty in our prior interpretations of § 56-9-831 which legislatively provides stacking limitations. It is therefore back to § 56-9-831 that we should look for classification of Ms. Locklear as will be illustrated.
The Majority indicates that a Class 1 insured as defined in § 56-9-831 must be either a named insured, spouse or resident relative. Again, while this is probably true in almost every conceivable case, this case is the exception.
We have held that § 56-9-831 creates only 2 classes of insureds. Class 2 insureds are guest passengers. Quite clearly, Ms. Locklear is not a guest passenger since she owned the vehicle as the Majority correctly held. But, the Majority also holds that she is not a Class 1 insured. The Majority then without explanation treats Ms. Locklear as a Class 2 insured (precluding stacking).
The understandable mistake in the Majority Opinion was equating the statutory definition of insured found in § 56-9-810 with the terms found in § 56-9-831. The latter statute provides stacking rules for "an insured or named insured." This particular phrase is used three times in this statute, but is arguably not specifically defined in the Statute. The Majority, quite logically, referred to the definitions found in Article 7 of the Financial Responsibility Act to discern the definition. They then concluded that the term "insured or named insured" must mean the "named insured, his spouse and relatives residing in his household while in a motor vehicle or otherwise ..." quoting from § 56-9-810. However, § 56-9-810(2) provides in full:
"The term `insured' means the named insured and, while resident of the same household, the spouse of any

*553 such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies and a guest in such motor vehicle to which the policy applies or the personal representative of any of the above."
If the majority is correct in applying the definition of "insured" found in § 56-9-810(2) to the term "insured or named insured" found in § 56-9-831, then a Class 1 insured also includes a guest passenger! ("Insured or named insured" as found in § 56-9-31 = definition of "insured found in § 56-9-810(2) which includes named insured, spouse, resident relative and guest passenger; therefore, a Class 1 insured under § 56-9-831 includes a guest passenger." Obviously, such a result was not intended by the Majority nor more importantly, the Legislature.
The error is looking beyond § 56-9-831 for the definition of a Class 1 or Class 2 insured. In using the phrase "insured or named insured" consistently and repeatedly in the statute, the Legislature could not have been referring to § 56-9-810 for numerous reasons. First, § 56-9-810 is never referenced or mentioned. Second, the term would be redundant if referring to § 56-9-810 because an insured would include the named insured. Finally, the term would also include guest passengers if the definition of § 56-9-810 was incorporated.
The Majority specifically concluded Ms. Locklear was prohibited from stacking because she is not a "statutory insured." However, this is not the language of § 56-9-831 nor of any of our prior decisions. Looking back at § 56-9-831 as we are required, we have held that only a Class 2 insured (a guest passenger) is precluded from stacking. Garris v. Cincinnati Ins. Co., 280 S.C. 149, 311 S.E. (2d) 723 (1984); Nationwide v. Howard, supra. § 56-9-831 as well as our previous decisions clearly hold that when an "insured or named insured's" vehicle is involved in the accident, the stacking prohibition does not apply. Quite understandably, the Majority concludes that an insured will almost always be the named insured, spouse or resident relative. However, as this case again demonstrates, "insured" for the purpose of this section can be in an exceptional circumstance a *554 broader definition. Here the Appellant in its policy has admittedly defined Ms. Locklear as an insured. She was the owner of the vehicle and as the trial court reasoned, must be construed as a Class 1 insured. Any other conclusion redefines and rewrites not only the statute but our prior holdings.
The Majority next concludes that Ms. Locklear is subject to the contractual limitation on uninsured motorist coverage citing Kraft v. Hartford Insurance Companies, 279 S.C. 257, 305 S.E. (2d) 243 (1983). This conclusion is apparently bottomed on the premise that contractual extension of "insurability" equates to contractual extension of "coverage." This is a new concept which certainly was not contemplated in Kraft.
We have previously held that that any policy provision purporting to limit stacking of statutorily required "coverage" is invalid. Jackson v. State Farm Mut. Auto. Ins. Co., 288 S.C. 335, 342 S.E. (2d) 603 (1986); Belk v. Nationwide Mutual Ins. Co., 271 S.C. 24, 244 S.E. (2d) 744 (1978). A required coverage has been defined as a coverage required to be provided or to be offered. Jackson v. State Farm, supra; Busby v. State Farm Mut. Auto. Ins. Co., 280 S.C. 330, 312 S.E. (2d) 716 (1984).
Both uninsured and underinsured motorist coverages are required coverages as they are both either mandatory or required to be offered. Yet, the Majority is now illogically allowing a contractual restriction on the stacking of this "required coverage" by a misplaced definition of the insured.
Quite simply, Kraft involves the contractual extension of liability "coverage" beyond that required by the liability statute. Here the Appellant has contractually extended the normal and typical definition of "insured" to include Ms. Locklear. Like Kraft, this was not required by any statute, but this is where the comparison ends.
In Kraft, liability coverage was extended to a non-owned vehicle. We referred back to the liability statute and concluded that liability coverage is not mandated for nonowned vehicles. Therefore, any policy provisions restricting this coverage could not violate statutory provisions or public property.
*555 Here, insurability has been extended to Ms. Locklear by the Appellant's policy provisions. Again, similarly to Kraft, this was not required. However, once Ms. Locklear is determined to be insured under the Appellant's policy, the focus must return to the statutory scheme just as we did in Kraft. § 56-9-831 provides the uninsured and underinsured stacking rules for an "insured or named insured." Unlike Kraft, the policy provisions here clearly limit the stacking rights of a defined and admitted insured. These provisions therefore violate public policy and are void. Jackson v. State Farm, supra.
To illustrate the subtle distinction between the extension of coverage versus the extension of insurability, an illustration would be beneficial. Assume in Kraft the policy has provided that liability coverage on the vehicle described in the policy had been extended to operation of the vehicle by a non-permissive user. This is beyond the scope required by the statutes which limits insureds for liability purposes to permissive drivers. This is therefore an extension of insurability. Next assume, that the policy provided that in the case of an non-permissive use only $5,000.00 in liability coverage would be offered. Unlike Kraft, this fact situation would violate § 56-9-820 which provides the minimum liability limits required on motor vehicles operated in this State.
In Kraft, even after the extension of coverage, the terms of the statute were not violated. In the illustration and this case, the extension of insurability with the limitation on coverage would violate the terms of the applicable statute.
Stacking issues and insurability have become dreaded issues to the judiciary and the bar primarily because of hybrid policies which either extend coverages or combine terms or limits. It is common knowledge that consumers are not at arms' length to bargain with the insurance industry. This is the primary reason for the traditional consumer oriented construction of adhesion contracts. I fear that Majority is today shifting this long standing rule of contractual construction.
No reason has been given for the Appellant's unilateral decision to extend uninsured and underinsured motorist coverage to Ms. Locklear. Everyone agrees, however, that Mr. *556 Mullins should be entitled to the $35,000.00 single limit uninsured endorsement at the very minimum. He, after all, did contract and pay for this coverage and he is the named insured. Yet, as I have illustrated, the convoluted application of the policy cap provision has resulted in the Majority being forced to instruct the trial court to give Ms. Locklear part of Mr. Mullins' coverage. Mr. Mullins, the named insured and purchaser of the policy, will therefore in the end get less than everyone has agreed he is entitled to under his policy. Should the Majority, after considering my dissent. reconsider and determine that the policy cap only applies to Ms. Locklear, the same irrational result applies. Since Mr. Mullins would have already received the $35,000.00 endorsement, the contractual cap would allow Ms. Locklear to receive nothing. Hence, the Appellant, who created this situation by extending insurability to Ms. Locklear which the Majority has already concluded is supported by the contractual consideration, ends up paying nothing for this coverage. The coverage ends up not existing even though it has been contracted and paid for by Mr. Mullins. The insured still gets less than he paid for.
Unusual facts should logically create unusual results. Unfortunately, unusual facts often create inconsistent reasoning and more importantly, conflicting case law. After laboring with this case for more than 15 months, I am convinced that the trial judge's result is the only one which is consistent with our prior decisions and the statutory scheme. What is more, the trial judge's result is the only logical ending to this novel of peculiar facts and unusual policy provisions.
I would affirm.
NOTES
[1] While the issue of underinsured stacking has been resolved by the finding that uninsured and underinsured coverages are mutually exclusive, this decision of underinsured stacking is intended only to provide background information to the reader.
[2] It should be noted that this discussion is now rendered moot by the Legislature's amendment of § 56-9-810 which now includes a definition of an underinsured motorist vehicle.
[1] Repealed by the 1987 Act No. 155 § 25 effective January 1, 1988. Insurance matters have now been recodified in Title 38, Insurance. See § 38-77-140 for new text.
[2] I agree with Sections II and V of the majority opinion and therefore need not address them here.