1836

NATIONAL GENERAL INSURANCE COMPANY, Respondent v. Joretta PENA and Christopher Pena, Appellants.

(419 S.E. (2d) 375)

Court of Appeals

*Eugene C. Covington, Jr.,* of *Covington & Patrick* of Greenville, *for appellants.*

*George K. Lyall* and *Edwin L. Turnage,* both of Greenville, *for respondent.*

Heard April 13, 1992; Decided June 8, 1992.

Reh. Den. July 6, 1992.

CURETON, Judge:

This declaratory judgment action involves the issue of stacking of uninsured motorist coverage. The facts were stipulated and the court heard the case on cross motions for summary judgment. The court granted summary judgment in favor of National General Insurance Company. The Penas appeal. We affirm.

On August 18, 1989, Christopher Pena was riding as a passenger on a motorcycle driven by Samuel Cantrell. The motorcycle was owned by James Johnson. Cantrell failed to yield the right of way to another vehicle and an accident occurred in which Pena was injured. Johnson's liability insurance had expired prior to the accident and Cantrell had no insurance.

Christopher Pena resided with his mother, Joretta Pena. She was insured by National General Insurance Company. The policy provided liability coverage of $25,000 per person/$50,000 per accident/25,000 property damage. The uninsured motorist coverage was $15,000 per person/$30,000 per accident/$5,000 property damage. The National General policy covered four listed vehicles. The motorcycle was not a listed vehicle under the policy.

The parties stipulated Christopher Pena sustained damages in the accident exceeding $60,000. The issuer in the case was the amount of uninsured motorist coverage available to Pena under the policy. National General contended the amount was $15,000 while the Penas contended the amount was $60,000 (i.e., 4 coverages X $15,000 per coverage).

The trial court held the amount of coverage was $15,000. The court concluded S.C. Code Ann. § 38-77-160 (Rev. 1989) was applicable.[1] The court held Pena was a Class II insured under the statute since he was riding on a motorcycle owned

---

[1] The code section is titled *Additional uninsured motorist coverage; underinsured motorist coverage.* The section provides, in relevant part, "If, however, an insured or named insured is protected by uninsured or underinsured motorist coverage in excess of the basic limits, the policy shall

by another person and not listed on Joretta Pena's policy. Therefore, the court held Pena was not entitled to stack uninsured motorist coverage from the National General policy.

The Penas appeal on the ground the court erred in concluding § 38-77-160 was controlling. They contend the section has no application to stacking of basic limits uninsured motorist coverage but applies only to stacking of additional uninsured motorist coverage and stacking of underinsured motorist coverage. They base this contention on the lack of reference to basic limits uninsured coverage in the language of the statute.

In analyzing this matter, it is beneficial to review some of the prior appellate cases which have considered the stacking issue. We will review these cases with primary emphasis upon (1) the limits of the policies under consideration and (2) whether any owned vehicle of the insured was involved in the accident. These factors are relevant in this case since this was a basic limits uninsured policy and no vehicle owned by Joretta Pena was involved in the accident.

## I.
### GARRIS v. CINCINNATI INS. CO.[2]

Thomas Garris and Roderick Huntley were killed in an automobile accident with an at-fault motorist. The motorist had minimum liability limits. At the time of the accident, Garris was driving a truck owned by Bryce Mechanical Contractors. Huntley was a passenger in the truck. Garris had an insurance policy with Allstate which provided coverage for four vehicles. Huntley had an insurance policy with State Automobile Mutual which provided coverage for two vehicles. No vehicle owned by either Garris or Huntley was involved in the accident.

One of the issues in the case was the extent of underinsured motorist coverage available to the estates of Garris and Huntley under their respective Allstate and State Automobile Mutual policies. The court applied § 56-9-831 (now repealed and recodified with amendments as § 38-77-160) and concluded Garris and Huntley were members of "the second class" under

---

provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident. If none of the insured's or named insured's vehicles is involved in the accident , coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage. . . ."

[2] *Garris v. Cincinnati Ins. Co.*, 280 S.C. 149, 311 S. E. (2d) 723 (1984).

the code section and could not stack coverage under their policies but could only recover benefits on one vehicle with the underinsured motorist coverage.[3] The basis for the decision on stacking seems to be that neither Garris nor Huntley had an owned vehicle involved in the accident.

## NATIONWIDE MUT. INS. CO. v HOWARD[4]

Gene Howard owned eight vehicles. He was injured when his truck was hit by an unidentified motorist. Howard's eight vehicles, including the truck, were insured under five separate liability insurance policies provided by two different insurers. The truck and one other vehicle were insured by Northland Insurance Company under a basic limits policy. His six other vehicles were insured by Nationwide Insurance Company under four policies. The Nationwide coverages were divided as follows:

(1) Three vehicles under fleet policy written with basic limits of 15-30-5;
(2) One vehicle under a single limits policy of $35,000;
(3) One vehicle under a single limits policy of $35,000;
(4) One vehicle under a single limits policy of $35,000.[5]

The issue was the amount of uninsured motorist coverage Howard could recover from Nationwide. The court analyzed § 56-9-831 and held Howard was entitled to coverage of $90,000. This was computed from the four Nationwide polices based upon $15,000 from each of the three coverages under the 15-30-5 fleet policy and $15,000 from each of the three single limit policies.[6] As we read the case, Howard was allowed to stack the uninsured motorist coverages provided by Nationwide because one of his owned vehicles was involved in the accident even though that truck was insured by Northland Insurance Company.

## STATE FARM v. WANNAMAKER[7]

Although this case primarily discussed the effective offer of

---

[3] Id. at 156, 311 S.E. (2d) at 727.

[4] Nationwide Mut. Ins. Co. v. Howard, 288 S.C. 5, 339 S. E. (2d) 501 (1985).

[5] Id. at 7, 339 S.E. (2d) at 502.

[6] Id. at 12, 339 S.E. (2d) at 505.

[7] State Farm Mut. Auto. Ins. Co. v. Wannamaker, 291 S. C. 518, 354 S.E. (2d) 85 (1988).

underinsured motorist coverage, it also addressed stacking. William Wannamaker had insurance coverage with State Farm under two insurance policies. His daughter was killed in an accident that did not involve either of the insured vehicles. Wannamaker's two policies each had limits of liability coverage of $50,000/100,000/25,000.[8] The court cited § 56-9-831 and held stacking was not allowed because "[w]hile underinsured coverage in amounts not exceeding the basic limits of $15,000/$30,000/$5,000 on each vehicle under an insurance policy can generally be staked . . . the present case is one clearly excluded by the statute since none of the insured's vehicles were involved in the wreck."[9]

## FIREMAN'S INS. CO. v. STATE FARM[10]

Glen Mullins and Joan Locklear were involved in an automobile accident with a Florida resident. The Florida resident had liability coverage that did not meet the required limits under South Carolina law. Therefore, the South Carolina Supreme Court considered the Florida driver to be uninsured under South Carolina law.[11] One issue in the case was the amount of uninsured coverage available to Mullins under an automobile insurance policy Mullins had with Firemen's Insurance Company. The Firemen's policy covered three vehicles. It was a single limits policy with "uninsured (and underinsured) coverage in the amount of $35,000 per accident."[12] At the time of the accident, Mullins was driving a car owned by Locklear. She was a passenger in the car.[13]

The trial court allowed Mullins to stack uninsured coverage of $15,000 per vehicle for a total of $45,000. The Supreme Court held this was error. The court gave the following analysis:

> In *Nationwide*, we held that stacking of uninsured motorist coverage was allowed when the insured comes within Class I—an insured or named insured has a vehicle involved in an accident.

---

[8] *Id.* at 522, 354 S.E. (2d) at 557.
[9] *Id.*
[10] *Fireman's Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 295 S.C. 538, 370 S.E. (2d) 85 (1988).
[11] *Id.* at 544, 370 S.E. (2d) at 88.
[12] *Id.* at 540, 370 S.E. (2d) at 86.
[13] *Id.*

In this case Mullins, the named insured under Firemen's policy, was driving Locklear's automobile when the collision occurred. Because none of Mullins' vehicles was involved in the accident, he is a Class II insured under the statute. As a consequence of Mullins being a Class II insured he is not permitted to stack uninsured coverage.[14]

### S.C. FARM BUREAU v. MOONEYHAM[15]

Cynthia Mooneyham had three insurance policies with South Carolina Farm Bureau Mutual Insurance Company. She was in an accident while driving a car insured by Farm Bureau under a policy with underinsured coverages of $25,000/$50,000/$25,000. The two other policies each provided underinsured motorist coverage in the amount of $15,000/$30,000/$15,000.[16] The supreme court stated Mooneyham was a Class I insured under the three policies. In making this statement the court cited § 38 38-77-160 which is the recodified and amended version of § 56-9-931.[17] The court defined the two classes under the section as Class I, which applies when an insured or named insured has a vehicle involved in the accident, and Class II, which applies to an insured whose vehicle is not involved in the accident.[18] The court further amplified the law of stacking by holding "when the car involved in the accident has underinsured motorist coverage in excess of the basic limits, the insured is entitled to stack underinsured motorist coverage from other policies in an amount equal to the coverage on the car involved in the accident."[19]

### II.

From a review of the cases we conclude § 38-77-160 is the authoritative statute on stacking of uninsured and underinsured motorist coverage.[20] We also conclude the statute has

---

[14] *Id.* at 545, 370 S.E. (2d) at 89.

[15] *S.C. Farm Bureau Mut. Ins. Co. v. Mooneyham* 304 S.C. 442, 405 S.E. (2d) 396 (1991).

[16] *Id.* at ___, 405 S.E. (2d) at 396, 397.

[17] *Id.*

[18] *Id.*

[19] *Id.* at ___, 405 S.E. (2d) at 398.

[20] The Supreme Court has held the same stacking rules under the statute apply to both types of coverage. *Id.* at ___, 405 S.E. (2d) at 397.

been interpreted such that a critical question in a stacking case is whether the insured has an owned vehicle in the accident and therefore is categorized as Class I. This is a distinguished factor between the *Nationwide* and the *Fireman's Insurance* cases in the uninsured context. It is also a factor noted in the *Garris, Wannamaker,* and *Mooneyham* decisions in the underinsured context.

The Penas argues this analysis has no relevance to policies providing basic limits uninsured coverage. They contend the language of § 38-77-160 indicates the section applies only to additional uninsured motorist coverage and does not apply to basic limits uninsured coverage.

We believe this argument has been implicitly resolved in the *Nationwide* case. Although several policies were involved, the fleet policy had basic limits uninsured coverage with three vehicles on it. That policy is similar to the policy issued to Joretta Pena. Mr. Howard was allowed to stack in *Nationwide* because he was a Class I insured.

We also agree with the trial court that the result urged by the Penas would create an inconsistency not intended by the legislature. If Joretta Pena had purchased additional uninsured coverage for the four vehicles on the policy, Christopher Pena would be considered a Class II insured under § 38-77-160 and would not be allowed to stack.[21] To allow stacking of basic limits uninsured coverage and not additional uninsured coverage in that situation would be illogical and inconsistent with the public policy of encouraging insureds to obtain additional coverages for their own benefit.

Affirmed.

BELL and GOOLSBY, JJ., concur.

---

[21] "If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage." S.C. Code Ann. § 38-77-160 (Rev. 1989).