James R. MILLER, Respondent,

v.

**AUTO–OWNERS INSURANCE CO., Appellant.**

No. C7–84–1235.

Court of Appeals of Minnesota.

Dec. 4, 1984.

Joan Bettenburg, Bertie, Bettenburg & Strong, St. Paul, for respondent.

Laura J. McKnight, Reding & Votel, St. Paul, for appellant.

Considered and decided by PARKER, P.J., and FORSBERG and RANDALL, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Appellant Auto-Owners Insurance Company (Auto-Owners) appeals from a judgment ordering the reformation of an insurance contract to include $10,000 of additional disability and income loss benefits per vehicle in the event that Auto-Owners fails to prove, at a trial upon the merits, that a meaningful offer of this coverage was made to respondent Miller. The trial court ruled that an obvious error exists in the printed and published statutory language of Minn.Stat. § 65B.49, subd. 6(a) (Supp. 1977) (repealed 1980), so that it should be interpreted to refer to disability and income loss benefits rather than medical expense benefits. We reverse.

## FACTS

In November 1977 Auto-Owners Insurance Co. issued an insurance policy covering two automobiles to James R. Miller. This policy was in effect when Miller was injured in an automobile accident in January 1978. At the time of the accident the Minnesota No-Fault Automobile Insurance Act required no-fault insurers to offer certain optional coverages to insureds in addition to the compulsory coverages. *See* Minn.Stat. § 65B.49, subd. 6 (Supp.1977) (repealed 1980). The statute read, in part:

> Subd. 6. Mandatory offer; added coverage. Reparation obligors shall offer the following optional coverages in addition to compulsory coverages:

(a) Medical expense benefits subject to a maximum payment of $10,000;

(b) Medical expense benefits subject to a maximum payment of $20,000 * * *.

Miller commenced a declaratory judgment action against Auto-Owners, claiming that it failed to offer optional coverages as required under Minn.Stat. § 65B.49, subd. 6(a) and (b). The complaint sought to impose added coverages of disability and income loss benefits subject to a maximum of $10,000 per vehicle and added medical expense benefits subject to a maximum of $20,000 per vehicle. Miller maintained that the statute was an obvious misprint and that it was the intent of the legislature that subdivision 6(a) refer to income loss benefits rather than medical expense benefits.

The court held that an obvious error existed in the statute and that subdivision 6(a) was intended to provide for added income loss benefits of $10,000. The court ordered that the insurance contract be reformed to include $10,000 of additional disability and income loss benefits per vehicle in the event that Auto-Owners failed to prove at trial that a meaningful offer of said coverage was made to Miller.

## ISSUE

Did the trial court properly interpret the Minnesota No-Fault Automobile Insurance Act in finding that an obvious error existed in the statutory language?

## DISCUSSION

The No-Fault Act became effective January 1, 1975. In November 1977, when respondent's insurance policy was issued, the mandatory offer provision read in full:

Subd. 6. Mandatory offer; added coverage.

Reparation obligors shall offer the following optional coverages in addition to compulsory coverages:

(a) Medical expense benefits subject to a maximum payment of $10,000;

(b) Medical expense benefits subject to a maximum payment of $20,000;

(c) Residual bodily liability coverage of not less than $25,000 for damages for injury to one person in any one accident arising out of the maintenance or use of a motor vehicle, subject to a limitation of $50,000 for damages arising out of any one accident;

(d) Basic economic loss benefits to all persons purchasing liability coverage for injuries arising out of the maintenance or use of a motorcycle;

(e) Underinsured motorist coverage offered in an amount at least equal to the insured's residual liability limits and also at lower limits which the insured may select, whereby the reparation obligor agrees to pay damages the insured is legally entitled to recover on account of a motor vehicle accident but which are uncompensated because the total damages exceed the residual bodily injury liability limit of the owner of the other vehicle. The reparation obligor is subrogated to any amounts it pays and upon payment has an assignment of the judgment if any against the other person to the extent of the money it pays; and

(f) Uninsured motorist coverage in addition to the minimum limits specified in subdivision 4, so as to provide total limits of uninsured motorist coverage equal to the residual bodily injury liability limits of the policy, or smaller limits as the insured may select. This coverage may be offered in combination with the coverage under clause (e).

Minn.Stat. § 65B.49, subd. 6 (Supp.1977). The Minnesota legislature amended subdivision 6 twice before it was ultimately repealed in 1980. See 1980 Minn.Laws ch. 539, § 7. In 1977 the legislature amended subsection (e) regarding underinsured motorist coverage. 1977 Minn.Laws ch. 266, § 3. The second change, also in 1977, amended subsections (c), (d), (e), and added subsection (f) regarding uninsured coverage. 1977 Minn.Laws ch. 276, § 3. In 1978 § 65B.49 was amended to change the reference of "Laws 1974, Chapter 408" to "sections 65B.41 to 65B.71." 1978 Minn. Laws ch. 674, § 57.

Miller argues, and the district court held, that the statute contains an obvious error in the printed language of subdivision 6(a) and should read "disability and income loss" instead of "medical expense" benefits. The insured contends that subdivision 6 contains a patent ambiguity because there is no logic or purpose in requiring a maximum of $10,000 of coverage in one provision and in the very next provision requiring a maximum of $20,000 of the same coverage.

He also argues that in light of the purpose of the No-Fault Act, to provide prompt payment of specified basic economic benefits without regard to fault, *see* Minn.Stat. § 65B.42(1) (1976), the legislature meant to provide additional optional coverages to supplement the compulsory basic economic loss benefits in Minn.Stat. § 65B.44, subd. 1 (1976). The statutory definition of basic economic loss benefits includes both medical expense and income loss:

> Basic economic loss benefits * * * shall provide a maximum of $30,000 for loss arising out of the injury of any one person, consisting of:
>
> (a) $20,000 for medical expense loss arising out of injury to any one person; and
>
> (b) a total of $10,000 for income loss, replacement services loss, funeral expense loss, survivor's economic loss, and survivor's replacement services loss arising out of the injury to any one person.

Minn.Stat. § 65B.44, subd. 1 (1976).

Auto-Owners, however, argues that the mandatory offer provisions should be enforced as written and published, since they manifest a legislative intent to provide varying levels of medical expense benefits. Auto-Owners contends that the statute is clear on its face, that they interpreted it reasonably in conducting business affairs, and therefore the trial court should be reversed because of their reliance on the statute as published. In addition, they point out that the Minnesota Supreme Court has not invalidated subdivision 6(a) as written, although it has been presented with opportunities to do so.

The legislature does not intend a result that is absurd, impossible of execution, or unreasonable, and the legislature intends the entire statute to be effective and certain. Minn.Stat. § 645.17 (1976). The trial court reasoned, having concluded that an obvious error existed, that since the optional coverages were meant to supplement the mandatory coverages, consistency with the statutory scheme would require insertion of the words "disability and income loss," as found in § 65B.44, subd. 1(b), into § 65B.49, subd. 6(a), in place of the present language. This view has the obvious virtue of rendering the two sections of the No-Fault Act consistent.

■ Our research into the legislative history indicates that it is by no means certain that this solution is what was intended by the legislature. In construing a statute, resort to extrinsic facts is permissible when its language is ambiguous, but is generally not permissible where the language is plain and unambiguous. *See Feick v. State Farm Mutual Automobile Insurance Co.,* 307 N.W.2d 772, 775 (Minn.1981). When examining the respective contentions of the parties it is important to remember that:

> The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions.
>
> When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

Minn.Stat. § 645.16 (1976).

■ Miller argues vigorously that a literal reading of the statute would frustrate the intention of the legislature, and therefore extrinsic aids may be used to aid interpretation. From the perspective of insurance companies, Auto-Owners and others have reasonably relied on the plain meaning of the statutory language in conducting regular business activities. A complete revision of subdivision 6(a) and a subsequent

retroactive reformation of the mandatory offer provisions would, in effect, penalize the insurers' reliance on the published language. Because it is difficult to perceive what the legislature intended there, considerations of fundamental fairness require us to resort to an examination of extrinsic evidence.

By so doing we have found legislative history indicating that the statutory language of Minn.Stat. § 65B.49, subd. 6(a), should be construed as enacted.[1] This legislative history demonstrates that, despite the purpose and design of the No-Fault Act, subsections (a) and (b) of Minn. Stat. § 65B.49, subd. 6, required the insurer to offer varying levels of medical expense benefits, and the omission of disability and income loss benefits from the mandatory offer provisions was deliberate.

### DECISION

Based on examination of the legislative history of the Minnesota No-Fault Automobile Insurance Act, we find the statutory language of Minn.Stat. 65B.49, subd. 6(a), should be construed as enacted.

Reversed.

---

1. Evidence of legislative intent includes (1) the unofficial engrossment of S.F. 96/H.F. 151, a model of the No-Fault Act used by the House and Senate Conference Committee, contains $30,000 and $40,000 maximums for medical expense benefits in subsections (a) and (b) of the mandatory offer provisions, with no mention of disability and income loss; (2) in a section-by-section summary of the Act, a legislative analyst who played an important role in the conference committee referred to "an additional $10,000 or $20,000 medical benefits" in describing the mandatory offer provision; (3) in a summary of H.F. 672 (1977 amendment), Senate counsel referred to "medical expense benefits subject to $30,000 maximum;" (4) as noted above, the legislature clarified certain ambiguous provisions in subdivision 6 while leaving subsections (a) and (b) as originally enacted; and (5) committee and session tapes recorded prior to the Act's enactment and during the amendment process show no apparent mistake in the statutory language.