Arnold R. BERG, et al., Respondents,

v.

WESTERN NATIONAL MUTUAL INSURANCE COMPANY, Appellant.

No. C1–84–1179.

Court of Appeals of Minnesota.

Dec. 31, 1984.

James Bettenburg, Joan Bettenburg, Bertie, Bettenburg & Strong, St. Paul, for respondents.

Michael McNee, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for appellant.

Heard, considered and decided by RANDALL, P.J., and HUSPENI and FORSBERG, JJ.

## OPINION

RANDALL, Judge.

Arnold Berg, an insured under a policy of insurance issued by Western National Mutual Insurance Company, brought this action against Western National to recover additional benefits beyond those already paid. From a judgment for Berg, Western National appeals. We reverse.

## FACTS

Arnold Berg was struck and seriously injured by an uninsured motorist while riding his moped. Western National, Berg's insurer, paid Berg $100,000, which represented the stacked $50,000 in uninsured motorist coverage Berg purchased for his two vehicles. Berg also collected $20,000 in stacked basic economic benefits.

After settling with his own carrier under portions of his policy not in dispute, Berg sued in district court to impose underinsured motorist benefits as additional coverage to his policy claiming that an adequate offer had not been made during the time period in Minnesota when reasonable offers of underinsured motorist coverage were mandatory. He also claimed to the trial court that should underinsured coverage be found, it was available to him over and above the money he had collected on his uninsured coverage to the extent of provable damages.

Berg also claimed that Minn.Stat. § 65B.49, subd. 6(a), (repealed 1980), should be rewritten to mandate an offer of $10,000 income loss benefits rather then $10,000 medical expense benefits as it actually read. He claimed the statute was an obvious error and should be rewritten to conform to a more logical meaning. Both parties moved for summary judgment on their respective claims and counterclaims; summary judgment was denied. Certain factual issues were tried to a jury and, following the jury's findings, the district

court made two decisions regarding coverage which are the subject of this appeal.

In conformity with the statute at that time, after the jury found that underinsured motorist coverage should have been offered but was not, the judge decided as a matter of law to impose underinsured motorist coverage.

65B.49 Insurers

Subd. 6. Mandatory offer; added coverage. Reparation obligors shall offer the following optional coverages in addition to compulsory coverages:

\* \* \* \* \* \*

(e) Underinsured motorist coverage offered in an amount at least equal to the insured's residual liability limits and also at lower limits which the insured may select, whereby the reparation obligor agrees to pay damages the insured is legally entitled to recover on account of a motor vehicle accident but which are uncompensated because the total damages exceed the residual bodily liability limit of the owner of the other vehicle. The reparation obligor is subrogated to any amounts it pays and upon payment has an assignment of the judgment if any against the other person to the extent of the money is (sic) pays;

Minn.Stat. § 65B.49, subd. 6(e) (repealed 1980). He then ruled it could be called on by the plaintiff policyholder to supplement his provable damages after Berg exhausted his uninsured motorist coverage. The trial judge also found as a matter of law that Minn.Stat. § 65B.49, subd. 6(a), contained an obvious error and that justice and logic required that the section be corrected to read: "[a] disability and income loss benefits subject to a maximum of 10,000." As written, the pertinent statute read:

65B.49 Insurers

Subd. 6. Mandatory offer; added coverage. Reparation obligors shall offer the following optional coverages in addition to compulsory coverages:

(a) Medical expense benefits subject to a maximum payment of $10,000;

(b) Medical expense benefits subject to a maximum payment of $20,000;

\* \* \* \* \* \*

Minn.Stat. § 65B.49, subd. 6 (repealed 1980).

The trial court found Western had failed to make the required offerings of $20,000 additional medical benefits and then read the statute to make a finding that Western failed to make a required offering of $10,000 disability and income loss benefits. With those findings and the jury's finding that Western had failed to offer underinsured motorist coverage, Western was thus made liable for those coverages. Pursuant to the jury's findings of fact and the trial court's conclusion, Berg was awarded an additional $100,000 in *underinsured* motorist benefits and $10,167 in additional income loss. An additional $40,000 of insurance coverage was made available for future medical expenses. The coverage for the $10,167 income loss award was obtained by interpreting Minn.Stat. § 65B.49, subd. 6(a), to require an offer of $10,000 "income loss" benefits rather than "medical expense," as it actually read. Western has appealed all of this award except the $40,000 coverage for medical expense imposed because of its failure to offer $20,000 additional medical expense coverage required by Minn.Stat. § 65B.49, subd. 6(b) (Berg had two cars, thus $40,000 rather than $20,000 was imposed).

## ISSUES

1. Did the trial court properly interpret § 65B.49, subd. 6(a) of the Minnesota No-Fault Automobile Insurance Act in finding that an obvious error existed in the statutory language?

2. Can underinsured motorist coverage be used to provide additional coverage to a policyholder injured by an uninsured motorist after the uninsured motorist coverage has been exhausted?

## ANALYSIS

### I.

*Statutory interpretation*

■ The trial court's substitution of the words "disability and income loss benefits"

for "medical expense benefits" in Minn. Stat. § 65B.49, subd. 6(a) (repealed 1980) was addressed by our decision in *Miller v. Auto-Owners Ins. Co.*, 358 N.W.2d 477 (Minn.Ct.App.1984), which is controlling. The statute must be construed as originally enacted.

## II.

*Extent of underinsured motorist insurance*

■ Underinsured motorist coverage is an obligation

whereby the reparation obligor agrees to pay damages the insured is legally entitled to recover on account of a motor vehicle accident but which are uncompensated because the total damages exceed the residual bodily injury liability limit of the owner of the other vehicle.

Minn.Stat. § 65B.49, subd. 6(e) (repealed 1980). Berg argues that the other driver was no longer uninsured, since Berg's own uninsured motorist coverage, in effect, *gave* him insurance. Berg argues his own uninsured coverage thus provided the other driver's "residual bodily injury liability limits," or the equivalent, and since Berg's damages exceeded that limit, his underinsured coverage should make up the difference. Significantly, however, the statute providing for underinsured motorist coverage specifically defines the covered risk in terms of the tortfeasor's third-party liability policy. Berg's first-party uninsured motorist coverage fails to satisfy the clear language of the statute. *Cf., Myers v. State Farm Mut. Automobile Ins. Co.*, 336 N.W.2d 288, 291 (Minn.1983) (underinsured motorist coverage is first-party coverage and follows the person, not the vehicle); *North River Insurance Co. v. Dairyland Insurance Co.*, 346 N.W.2d 109, 115 (Minn. 1984) (liability insurance is third-party coverage which follows the vehicle, not the person). In order for underinsured motorist benefits to be available to the injured insured, the tortfeasor must have a residual liability policy in effect.

■ Allowing Berg to tap into his underinsured motorist coverage after exhausting his uninsured motorist benefits would be to allow him to *convert* his underinsured coverage to additional uninsured coverage. Conversion of one kind of coverage into another kind, at the option of the insured, is prohibited. *Myers*, 336 N.W.2d at 291; *DiLuzio v. Home Mutual Ins. Co.*, 289 N.W.2d 749 (Minn.1980). The same motorist cannot be, at the same time, both uninsured and underinsured; the terms are mutually exclusive. Berg argues vigorously that a policyholder with both uninsured and underinsured motorist coverage, when injured by a tortfeasor with no applicable liability policy, can use his uninsured motorist coverage to collect because the other driver is uninsured, and then can use his uninsured coverage to produce the equivalent of liability insurance for the other uninsured driver and thus collect through his underinsured coverage.

Berg concedes that underinsured coverage is not applicable unless the tortfeasor has some coverage, but claims that his own uninsured coverage supplies the underlying but inadequate liability insurance needed on the tortfeasor to trigger his underinsured coverage. Berg's reasoning amounts to a claim that an uninsured tortfeasor has no liability insurance and therefore the insured's own uninsured coverage is available to him, *and* the uninsured tortfeasor is now technically insured for purposes of collecting underinsured benefits.

■ Berg argues that the policy of the No-Fault Act is to facilitate full recovery for injured persons. While we agree, we cannot stretch legislative language beyond its clear meaning. Allowing Berg to collect underinsured motorist benefits after his uninsured motorist benefits are exhausted is a substantive change in the No-Fault law which must be authorized by the legislature, not the courts.

Berg seeks a unitary coverage of uninsured and underinsured benefits which Minnesota does not now have. Under such a unitary plan, there would be one mandatory coverage called "uninsured motorist insurance." A policyholder could collect on

that insurance when injured by an uninsured tortfeasor, and if the tortfeasor had some liability limits but not enough to cover the policyholder's provable damages, the policyholder's uninsured motorist coverage would apply. Such coverage is based on the logical concept that when a tortfeasor's liability limits have been exhausted and there are still uncompensated injuries, the tortfeasor at that point is "uninsured." With this single mandatory coverage, the policyholder would be free to choose whatever limits of coverage he wished, without being subject to the risk that a tortfeasor will have no liability insurance, or some but not enough liability insurance. The limits of his coverage, since he bought and paid for them, would be at all times known to the policyholder. Insurance companies, knowing that they would have to sell such coverage with every policy (as they do now with uninsured coverage) could determine reasonable premiums. Such coverage, however, must be authorized by the legislature, not the courts.

### DECISION

The trial court erred in finding that an error existed in the printed 1978 Minn.Stat. § 65B.49, subd. 6(a) (repealed 1980.)

An insured injured by an uninsured motorist may not draw upon his own underinsured motorist coverage to supplement his uninsured motorist coverage after that coverage has been exhausted.

Reversed.