STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY
*v.* Dwight BEAVERS, Nan Beavers, and Carye Beavers

95-32                                                901 S.W.2d 13

Supreme Court of Arkansas
Opinion delivered July 10, 1995

*Boswell, Tucker & Brewster*, by: *W. Lee Tucker*, for appellant.

*Tim A. Womack, Esq.*, for appellees.

JACK HOLT, JR., Chief Justice. This case involves the interpretation of Arkansas's underinsured motorist statute. Appellee Carye Beavers, the daughter of appellees Dwight Beavers and Nan Beavers, was a passenger in her parents' vehicle on January 1, 1991 when it was struck by an uninsured motorist. At the time of the accident, the Beavers's vehicle was insured in a single policy issued by the appellant, State Farm Mutual Automobile Insurance Company ("State Farm"), under which the Beavers had paid separate premiums for uninsurance coverage up to $25,000, as well as underinsurance coverage up to a like amount.

After having their demand for both uninsured and underinsured coverage rejected, the Beavers filed suit against State Farm, which subsequently moved for partial summary judgment on the grounds that the Beavers were not entitled to underinsured motorist coverage, as the vehicle was struck by an uninsured motorist. The trial court denied the motion, ruling that Arkansas's under-

insurance motorist statute, codified at Ark. Code Ann. § 23-89-209 (1987), and the case law interpreting the statute, allowed underinsured as well as uninsured motorist coverage to apply, and due to the fact that the Beavers had paid separate premiums for both coverages, the uninsured coverage would exist up to the applicable limit in the event that Carye's injuries exceeded $25,000, or the limit of the Beavers's family uninsured coverage.

The case proceeded to trial, and, at the close of the Beavers's case in chief, State Farm moved for directed verdict on the same grounds as previously asserted in its motion for partial summary judgment. The trial court denied the motion. State Farm presented no evidence, and the jury returned a verdict in favor of the Beavers against State Farm in the amount of $700,000. The trial court entered judgment against State Farm for its policy limits in the amount of $25,000 in uninsured motorist coverage, $25,000 in underinsured motorist coverage, a 12 percent penalty, or $6000, $15,000 in attorney's fees, prejudgment interest calculated at 6 percent from the date of demand, and post-judgment interest of 8.5 percent.

On appeal, State Farm claims: (1) that the trial court erred as a matter of law in denying their motion for directed verdict on the issue of underinsured motorist coverage; and (2) that the trial court erred in awarding a penalty and attorney's fees on the underinsured portion of the judgment. On cross appeal, the Beavers insist that the trial court erred in failing to award them a 12 percent penalty from the date of demand. We reverse and remand, as the trial court erred in refusing to direct a verdict in favor of State Farm on the issue of underinsured motorist coverage.

## I. Underinsured and uninsured motorist coverage

The Beavers originally entered into a contract to insure their vehicle with State Farm on May 30, 1990, which provided for both uninsured motorist coverage and underinsured motorist coverage, for which the Beavers paid separate premiums. This contract was renewed on November 30, 1990, with coverage to extend until May 30, 1991.

Inasmuch as the trial court found that the Beavers were entitled to insurance coverage under both its underinsured and unin-

sured schedules, State Farm asserts as its first allegation of error that the trial court erred in failing to direct a verdict in its favor on the issue of underinsurance motorist coverage, as the vehicle in which Carye Beavers was a passenger on January 1, 1991, was struck by an uninsured, not an underinsured motorist.

In analyzing this case of first impression, we subscribe to the method of review suggested in a related law review article that "the result in almost any stacking problem is best determined by a simple rule: *Read the Statute and Read the Policy!*" Douglass and Telegadis, *Stacking of Uninsured and Underinsured Motorist Vehicle Coverages*, 24 U. Rich. L. Rev. 87 (Fall 1989). Accordingly, we examine both the Beavers's policy and Arkansas's underinsured motorist statute to reach our conclusions.

The policy purchased by the Beavers describes both an uninsured and an underinsured motor vehicle. An uninsured motor vehicle is defined in part as "a land motor vehicle . . . which is not insured or bonded for injury liability at the time of the accident." Whereas, in contrast, an underinsured motor vehicle is defined as "a land motor vehicle . . . which is insured or bonded for bodily injury liability at the time of the accident; but the limits of liability for bodily injury are less than the amount needed to compensate the insured's damages." Moreover, the policy specifically states that an underinsured motor vehicle "does not include a land motor vehicle . . . defined as an uninsured motor vehicle in your policy."

Professor Alan I. Widiss, in a recent treatise, discusses this issue as follows:

> Many insurance policies set forth underinsured motorist insurance and uninsured motorist insurance as separate coverages. In some instances, an insured who sustained damages as a result of an accident with an uninsured motorist has sought the coverage afforded by the underinsured motorist insurance as well as the uninsured motorist insurance benefits. Although there are not many appellate court precedents addressing this issue, in virtually all circumstances an injured person will not be able to receive both uninsured motorist benefits and underinsured motorist benefits. Simply put, as defined in the standard cov-

erage terms and as contemplated by legislative requirements, uninsured and underinsured are separate, distinct and mutually exclusive coverages in regard to any single motor vehicle which has been negligently operated.

Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance*, § 35.20, at 195 (2d ed. 1992) (Footnotes omitted). As recognized by Professor Widiss, virtually all states who have addressed this issue have concluded that duplicative recoveries are not permitted. *See Evenchik* v. *State Farm Ins. Co.*, 679 P.2d 99 (Ariz. App. 1984); *National Union Fire Ins.* v. *Ferreira*, 790 P.2d 910 (Haw. 1990); *Berg* v. *Western Nat. Mut. Ins. Co.*, 359 N.W.2d 726 (Minn. App. 1984); *Monti* v. *United Services Auto Ass'n*, 423 S.E.2d 530 (N.C.App. 1992); *Fireman's Ins. Co.* v. *State Farm Mut.*, 370 S.E.2d 85 (S.C. 1988). *See also Jenkins* v. *Lanigan*, 396 S.E.2d 28 (Ga. App. 1990). We have examined our cases for precedent and find that we have not delved into this particular issue; thus, we give weight to this backdrop of authority furnished by Widiss.

█ As cited by both parties in the present appeal, this court, has, however, recognized the difference between uninsured and underinsured motorist coverage in *Clampit* v. *State Farm Mut. Auto. Ins. Co.*, 309 Ark. 107, 828 S.W.2d 593 (1992), as follows:

We concede the distinction between *un*insured and *under*insured motorist coverage. Uninsured motorist coverage applies when a tortfeasor either has no insurance or has less than the amount required by law. Coverage is designed to guarantee a minimum recovery equal to that amount. *Under*insured coverage applies when the tortfeasor has at least the amount of insurance required by law, but not enough to fully compensate the victim. This coverage is designed to provide compensation to the extent of the injury, subject to the policy limit. *See Kluiter* v. *State Farm Mutual Automobile Insurance*, 417 N.W.2d 74 (Iowa 1987).

Conceivably, there are situations where the difference between uninsured and underinsured motorist coverage could affect recovery . . .

Stated another way, "it is practical and pure common sense that

underinsurance should not [apply] until it is determined whether the insured is in fact underinsured." *State Farm Mut. Auto Ins. Co. v. Thomas*, 316 Ark. 345, 871 S.W.2d 571 (1994).

As mentioned, the policy in question specifically provides that an uninsured motor vehicle "does not include a land motor vehicle . . . defined as an underinsured motor vehicle in your policy." Granted, the fact that the exclusion of an uninsured motor vehicle from the definition of an underinsured motor vehicle may not, standing alone, pass muster in light of the strong public policy against exclusion of coverage. *See McGarrah v. Southwestern Glass Co.*, 41 Ark. App. 215, 852 S.W.2d 328 (1993); *Arkansas Farm Bureau Ins. Federation v. Ryman*, 309 Ark. 283, 831 S.W.2d 133 (1992); *Ark. Blue Cross & Blue Shield v. Long*, 303 Ark. 116, 792 S.W.2d 602 (1990). Yet, in following the simple rule of considering this policy's language, including its definition and exclusions, together with the language of the statute, which clearly refers to the tortfeasor's insurance coverage, we must conclude that underinsured coverage does not apply when the insured is struck by an uninsured motorist.

At the time of the accident, the Arkansas underinsurance motorist statute, codified at Ark. Code Ann. § 23-89-209 (1987), provided in pertinent part as follows:

(a) . . . Coverage of the insured pursuant to underinsured motorist coverage shall not be reduced by *the tortfeasor's insurance coverage*, except to the extent that the injured party would receive compensation in excess of his damages. (Emphasis added.)

As State Farm suggests in its brief, the underinsured motorist statute contemplated that the tortfeasor would in fact have insurance coverage, which would therefore exclude a tortfeasor who is uninsured. Later, Act 1180 of 1993, effective for new policies issued after July 1, 1993, and to existing policies from and after their first renewal on or after January 1, 1994, changed § 23-89-209, expounding on the definition of underinsured motorist coverage:

(a)(3) The coverage shall enable the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injuries to or death of an insured, which the insured is legally entitled to recover from the

owner or operator of another motor vehicle, whenever the liability insurance limits *of such other owner or operator* are less than the amount of damages incurred by the insured.

(Emphasis added.) We have long stated that the basic rule of statutory construction is to give effect to the intent of the legislature, and when a statute is clear, it is given its plain meaning. *Hercules, Inc.* v. *Pledger*, 319 Ark. 702, 894 S.W.2d 576 (1995). We can look to changes to statutes made by subsequent amendments to determine legislative intent. *See American Casualty Co.* v. *Mason*, 312 Ark. 166, 848 S.W.2d 392 (1993). Obviously, both the statute in effect at the time of the accident and its 1993 amendment refer to the "the tortfeasor's insurance coverage" and the insurance limits "of such other owner or operator," respectively. In short, the statute is clear that underinsured motorist coverage is triggered when the tortfeasor's insurance, not that of the insured, is less than the amount of damages incurred by the insured.

■ Under these circumstances, we hold that the trial court erred in refusing to direct a verdict in State Farm's favor on the issue of the application of underinsured motorist coverage on the grounds that the policy excluded the definition of an uninsured motor vehicle from an underinsured vehicle, and, in particular, on the plain meaning of the statute in effect at the time of the accident, which clearly referred to "the tortfeasor's insurance coverage."

## II. Penalty and attorney's fee

For its second allegation of error, State Farm asserts that the trial court erred in awarding a penalty and attorney's fee on the underinsured portion of the judgment, which is an extension of State Farm's first point on appeal.

■ Arkansas Code Annotated § 23-89-208(f) provides for payment of a penalty and attorneys' fees when the insurer is ordered to pay overdue benefits:

In the event the insurer is required to pay the overdue benefits, the insurer shall, in addition to the benefits received, be required to pay the reasonable attorneys' fees incurred by the other party, plus twelve percent (12%) penalty, plus interest thereon from the date these sums become overdue.

As the penalty and attorney's fees were calculated on the basis of both uninsured and underinsured coverage, we remand so that the 12-percent penalty and attorney's fees can be recalculated commensurate with the recovery of uninsured benefits only.

### III. 12-percent penalty

On cross-appeal, the Beavers assert that the trial court erred in failing to award them a 12-percent penalty per annum from the date of demand pursuant to Ark. Code Ann. § 23-79-208(a) (Repl. 1992). The provision provides, in pertinent part, as follows:

> In all cases, where loss occurs and the . . . insurance company . . . liable therefore shall fail to pay the losses within the time specified in the policy, after demand made therefor, the person, firm, corporation, or association shall be liable to pay the holder of the policy or his assigns, in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorneys' fees for the prosecution and collection of the loss.

While the Beavers argue that the 12-percent penalty should have been awarded *per annum* from March 14, 1991, the date they filed their complaint, they concede in their brief that the statute itself speaks of a flat 12-percent damages upon on the amount of the loss, and cite no authority in support of their position that this penalty be awarded *per annum*. We have stated that, where an appellant cites no authority, nor makes a convincing argument, and where it is not apparent without further research that the point is well taken, we will affirm the decision of the trial court. *Quinney* v. *Pittman*, 320 Ark. 177, 895 S.W.2d 538 (1995).

Reversed and remanded on direct appeal and affirmed on cross-appeal.

NEWBERN, J., not participating.