Steven A. PUDIL and Diane Lynn Pudil, Appellants,

v.

STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPA-NY, Appellee.

No. 99–1533.

Supreme Court of Iowa.

Sept. 6, 2001.

* Senior Judge assigned by order pursuant to    Iowa Code section 602.9206 (2001).

Michael L. Mollman of Mollman Law Office, Cedar Rapids, for appellants.

J. Michael Weston and Brenda K. Wallrichs of Moyer & Bergman, Cedar Rapids, for appellee.

TERNUS, Justice.

In the ruling at issue in this appeal, the trial court held that the plaintiffs could not recover both uninsured motorist and underinsured motorist benefits. We agree and so affirm.

I. *Background Facts and Proceedings.*

On December 22, 1995, the plaintiff, Steven Pudil, was a passenger in a truck being driven by Andrew Chalupsky when it was involved in a one-vehicle accident. Swisher Plumbing Company, Inc., Pudil and Chalupsky's employer, owned the truck.

Chalupsky had no liability insurance at the time of the accident. The truck, however, was insured under a liability policy issued to Swisher Plumbing by West Bend Mutual Insurance Company. In addition, Pudil and his wife, Diane, had a liability insurance policy with the appellee, State Farm Insurance Company, that insured their personal automobile. Both the West Bend and State Farm policies included uninsured motorist and underinsured motorist coverage as well as liability coverage.

The Pudils sued Chalupsky, Swisher Plumbing and State Farm seeking damages for the injuries sustained by Pudil in the accident. In that lawsuit the plaintiffs alleged that Chalupsky negligently caused the accident and was, therefore, liable for their damages. They sought to recover from Swisher Plumbing on a theory of owner liability. *See* Iowa Code § 321.493 (Supp.1995). With respect to their claim against State Farm, the plaintiffs alleged that in the event Chalupsky and Swisher Plumbing did "not have adequate insurance," State Farm was obligated under its uninsured/underinsured motorist coverage.

Prior to trial West Bend paid the limits of its uninsured motorist (UM) coverage to the plaintiffs and the plaintiffs then dismissed Chalupsky and Swisher Plumbing from the lawsuit. In the release and settlement agreement signed by the plaintiffs, they acknowledged that the settlement payment was paid solely under the terms of the UM coverage and that this sum was the only amount they would receive from West Bend.

The case against State Farm was submitted to the trial court on a stipulated record. The plaintiffs argued in one of their trial briefs that although "Pudil was injured by the negligence of an uninsured driver," the payment made by West Bend "render[ed] the vehicle an underinsured vehicle for purposes of coverage under the State Farm policy." By the time of trial, the plaintiffs had abandoned any claim under State Farm's uninsured motorist coverage.

The trial court found that West Bend's liability coverage did not apply to the accident and that the plaintiffs had received the limits of West Bend's uninsured motorist coverage. The court also found that Chalupsky was an uninsured motorist. The trial court held that the vehicle could not be both uninsured and underinsured, noting that these coverages are "separate, distinct, and mutually exclusive." The court concluded, therefore, that State Farm had no liability under its underin-

sured motorist (UIM) coverage. The Pudils appealed.

## II. *Scope of Review.*

■ Review of a law action tried to the court on stipulated facts is "limited to assigned error in the district court's application of law pertinent to the controversy." *Stewart v. DeMoss,* 590 N.W.2d 545, 547 (Iowa 1999). Factual findings made by the court are binding on appeal if supported by substantial evidence. *See* Iowa R.App. P. 14(f)(1). "The construction of an insurance contract and the interpretation of its language are matters of law for the court." *Ill. Nat'l Ins. Co. v. Farm Bureau Mut. Ins. Co.,* 578 N.W.2d 670, 671 (Iowa 1998).

## III. *Discussion.*

The Pudils seek to recover under a contract of insurance with State Farm. Therefore, we begin our analysis with a review of the contract, specifically, the pertinent provisions of the UIM coverage of the State Farm policy. In this coverage, State Farm agrees to "pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle." (Emphasis omitted.) Thus, at the outset, it is clear that in order to recover any UIM benefits, the plaintiffs must establish that the truck owned by Swisher Plumbing and driven by Chalupsky was an "underinsured motor vehicle."

The State Farm policy defines the term "underinsured motor vehicle" as "a land motor vehicle ... the ownership, maintenance or use of which is insured ... for bodily injury liability at the time of the accident[,] and ... whose limits of liability for bodily injury liability ... are less than the amount of the insured's damages...." The UIM coverage specifically provides that an *underinsured* motor vehicle does not include a motor vehicle defined as an

*uninsured* motor vehicle. The policy definition of "uninsured motor vehicle" includes "a land motor vehicle, the ownership, maintenance or use of which is ... insured ... for bodily injury liability at the time of the accident[,] but ... the insuring company denies coverage...."

These policy terms comport with our uninsured/underinsured motorist statute, Iowa Code chapter 516A. *See generally Tri-State Ins. Co. v. DeGooyer,* 379 N.W.2d 16, 17 (Iowa 1985) (stating that "[t]he statute itself forms a basic part of the policy and is treated as if it had actually been written into the policy"). This court has previously explained the difference between UM and UIM coverage as contemplated by the Iowa statute:

> If the tortfeasor has *no liability insurance* the injured plaintiff can, under his own uninsured motorist coverage, recover his loss from the tort, subject to the limit of that uninsured coverage.... Correspondingly, if the tortfeasor has *some liability insurance* but insufficient to pay the loss fully, the plaintiff can, under his own underinsured motorist coverage, recover his loss from the tort less the tortfeasor's available liability insurance proceeds, subject to the limit of that underinsured coverage....

*Am. States Ins. Co. v. Estate of Tollari,* 362 N.W.2d 519, 522 (Iowa 1985) (emphasis added; original emphasis omitted) (citation omitted); *accord Kluiter v. State Farm Mut. Auto. Ins. Co.,* 417 N.W.2d 74, 75 (Iowa 1987) (noting that the purposes behind UM and UIM coverage are somewhat different—UM coverage applies where a tortfeasor either has no insurance or has less than required by Iowa's financial responsibility law and UIM coverage applies where the negligent tortfeasor has at least the required amount of insurance, but does not have enough to fully compensate the victims of negligence).

Based on the applicable policy language, we think the determinative issue here is whether the plaintiffs' damages were caused by the owner or driver of an "underinsured motor vehicle." That issue, in turn, depends on whether the ownership or use of the truck was insured for bodily injury liability at the time of the accident, making it an underinsured motor vehicle, or whether the liability insurer had denied coverage, making it uninsured under the terms of the UIM coverage.

▮ Initially, we address the plaintiffs' argument that the State Farm policy is ambiguous with respect to the type of "coverage" that must be denied by the insurer in order to render the vehicle uninsured. The State Farm policy definition of "uninsured motor vehicle" is clear when read in context: *"Uninsured Motor Vehicle*—means: ... a land motor vehicle, the ownership, maintenance or use of which is ... insured or bonded for *bodily injury liability* at the time of the accident; but ... the insuring company denies coverage...."* (Second emphasis added.) It is readily apparent from reading the entire definition that the denial-of-coverage language refers to "bodily injury *liability*" coverage. Thus, the trial court was correct in focusing on whether there was *liability* coverage on the Swisher Plumbing vehicle for this accident in determining its insured status. We turn now to an examination of the factual support for the trial court's conclusion that the vehicle was uninsured.

The trial court concluded that the vehicle was uninsured, which, by definition, precluded the vehicle from being underinsured. Under the stipulated facts of this case, we think there is substantial evidence to support this finding. West Bend paid

and the plaintiffs accepted payment under the *uninsured* motorist coverage of the West Bend policy. (The West Bend policy, like the State Farm policy, defined an "uninsured motor vehicle" as "a land motor vehicle ... [f]or which an insuring ... company denies coverage....") The plaintiffs relinquished any claim to payment under the liability coverage of the West Bend policy. Moreover, the plaintiffs admitted in their trial court pleadings that Chalupsky was an uninsured motorist. These facts support the trial court's finding that the truck was uninsured and, therefore, that finding is binding on appeal.

▮ That brings us to the next issue: Did the payment of UM benefits by West Bend transform the vehicle into an underinsured motor vehicle, as the plaintiffs contend? We agree with the trial court that it did not. Whether a vehicle is an underinsured motor vehicle is determined as of "the time of the accident" since the policy defines that term as a motor vehicle, the ownership or use of which is insured "for bodily injury liability at the time of the accident." Under the trial court's findings, there was no *applicable* bodily injury *liability* insurance at the time of the accident.[1] *UM* benefits paid under a policy insuring the injured party do not qualify as bodily injury liability insurance so as to satisfy the policy definition of underinsured motor vehicle. *See State Farm Mut. Auto. Ins. Co. v. Beavers*, 321 Ark. 292, 297, 901 S.W.2d 13, 16 (1995) (stating, "[i]n short, the statute is clear that underinsured motorist coverage is triggered when *the tortfeasor's insurance, not that of the insured,* is less than the amount of damages incurred by the insured" (empha-

---

1. The stipulated record does not reveal the reason for West Bend's refusal to pay under the liability coverage of its policy.

sis added)); *State Farm Mut. Auto. Ins. Co. v. Lindsey,* 54 Ark.App. 390, 391, 926 S.W.2d 850, 851 (1996) (stating that the Arkansas "statute implies that underinsured coverage is not triggered unless the *tortfeasor* has insurance in the first instance" (emphasis added)); *Berg v. W. Nat'l Mut. Ins. Co.,* 359 N.W.2d 726, 729 (Minn.Ct.App.1984) (holding that in order for insured to qualify for UIM benefits, there must have been a liability policy in effect; UM coverage does not satisfy this requirement). Contrary to the plaintiffs' position, the West Bend UM coverage was not coverage on the truck; it was coverage on the plaintiffs, who qualified as insureds under the UM coverage of the policy because they were injured by the driver of an uninsured vehicle.[2] *See Hornick v. Owners Ins. Co.,* 511 N.W.2d 370, 372 (Iowa 1993) (stating that "uninsured and underinsured motorist coverage protects ... the person, not the vehicle").

Because the classification of a vehicle as uninsured or underinsured is made as of the time of the injury-causing accident, it is logically impossible for the vehicle to be both uninsured and underinsured at the same time. As a noted treatise states: "Simply put, as defined in the standard coverage terms and as contemplated by legislative requirements, uninsured and underinsured are separate, distinct and *mutually exclusive* coverages in regard to any single motor vehicle which has been negligently operated." 3 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 35.20, at 300 (rev.2d ed.2001) (emphasis added).

Several other states have held that UM and UIM coverages are mutually exclusive. *See, e.g., Beavers,* 901 S.W.2d at 16–17 (overruling district court's decision

that plaintiffs were entitled to both UM and UIM coverage under policy on the basis that the policy excluded from the definition of an underinsured motor vehicle an uninsured vehicle and on the plain meaning of the statute applicable to underinsurance coverage which clearly referred to "the tortfeasor's insurance coverage," an indication that the coverages were mutually exclusive); *Evenchik v. State Farm Ins. Co.,* 139 Ariz. 453, 458, 679 P.2d 99, 104 (1984) (rejecting plaintiff's argument that "since the uninsured motorist has zero coverage he is underinsured and the [underinsured] coverage kicks in on top of the uninsured limit to provide additional coverage" and noting that under the statute, when a negligent driver or owner has liability coverage, the vehicle is not uninsured); *Nat'l Union Fire Ins. Co. v. Ferreira,* 71 Haw. 341, 345, 790 P.2d 910, 913 (1990) (holding that under the plain and obvious meaning of the UIM statute, a prerequisite to the term "underinsured motor vehicle" is the existence of " 'bodily injury liability insurance coverage' which is 'less than the liability for damages imposed by law' " and where no such coverage existed, tortfeasor was not underinsured under the statute but rather uninsured; concluding that terms underinsured and uninsured are mutually exclusive as applied to the same motor vehicle and the combination of these two coverages by the insured was contrary to legislative intent); *Berg,* 359 N.W.2d at 729 ("The same motorist cannot be, at the same time, both uninsured and underinsured; the terms are mutually exclusive."); *Bjornson v. Guar. Nat'l Ins. Co.,* 539 N.W.2d 46, 47–48 (N.D.1995) (rejecting insured's claim for UM and UIM benefits under single policy, holding "[t]he

**2.** The West Bend uninsured motorist coverage included as insureds anyone occupying a covered auto—Pudil—and "[a]nyone for damages

he is entitled to recover because of 'bodily injury' sustained by another 'insured' "—Pudil's wife.

definitions of an uninsured and an under-insured motor vehicle in [the insured's] policy with [the insurer] unambiguously preclude an insured from receiving both UM and UIM benefits when the tortfea-sor's vehicle, although carrying some lia-bility insurance protection falls within the definition of an uninsured motor vehicle"); *Fireman's Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 295 S.C. 538, 539, 370 S.E.2d 85, 86 (1988) (stating that "an indi-vidual may be either uninsured or under-insured, but not both"). The plaintiffs contend that these cases are distinguish-able because they involve uninsured and underinsured coverages under a single policy. The fact that a single policy was involved in these cases is, however, a dis-tinction without a difference. The same rationale applies regardless of whether the UM and UIM coverages are found in a single policy or separate policies: A vehi-cle cannot be both uninsured and underin-sured at the same time.

In summary, we conclude that the dis-trict court correctly held that Pudil's inju-ries were caused by the negligence of the driver of an uninsured motor vehicle. Therefore, by definition, the vehicle was not underinsured. Accordingly, there was no error in the trial court's judgment that the State Farm UIM coverage was not available to the plaintiffs under the circum-stances of this case.

**AFFIRMED.**

SNELL, S.J.,* participates in lieu of STREIT, J., who takes no part.