

# IN THE
# TENTH COURT OF APPEALS

### No. 10-19-00285-CR

**BRYAN LACY SWISHER,**

                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                            **Appellee**

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2016-774-C1

### MEMORANDUM OPINION

On September 9, 2020, this Court issued a memorandum opinion affirming appellant Bryan Lacy Swisher's convictions for continuous sexual abuse of a young child and indecency with a child by contact. *See generally Swisher v. State*, No. 10-19-00285-CR, 2020 Tex. App. LEXIS 7330 (Tex. App.—Waco Sept. 9, 2020, no pet. h.) (mem. op., not designated for publication). On September 23, 2020, Swisher filed a motion for rehearing, and we requested a response to that motion. After reviewing the motion for rehearing

and response thereto, we grant the motion for rehearing. We withdraw our memorandum opinion and judgment issued on September 9, 2020, and substitute the following in their place.

In three issues, appellant, Bryan Lacy Swisher, challenges his convictions for continuous sexual abuse of a young child and indecency with a child by contact. *See* TEX. PENAL CODE ANN. §§ 21.02, 21.11. We affirm as modified.

## I. SUFFICIENCY OF THE EVIDENCE

In his first issue, Swisher argues that the evidence is legally and factually insufficient to prove identity. Swisher emphasizes that the child victim failed to sufficiently identify Swisher in open court as the assailant and that neither the child victim's mother nor another relative who alleged that Swisher sexually assaulted her sufficiently identified Swisher in the courtroom as the person they were testifying about.

At the outset, we address Swisher's contention that the evidence is factually insufficient to prove identity. The Court of Criminal Appeals has determined that factual sufficiency no longer applies in criminal cases. *See Brooks v. State*, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010) (plurality op.) (concluding that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the . . . factual-sufficiency standard, and these two standards have become indistinguishable" and holding the following: "As the Court with final appellate jurisdiction in this State, we decide that the *Jackson v. Virginia* standard is the only standard that a reviewing court

should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary, including *Clewis*, are overruled."); *see also Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Kiffe v. State*, 361 S.W.3d 104, 109-110 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (rejecting a constitutional challenge to the single sufficiency standard in criminal cases under the factual-conclusivity clause and stating that, "[a]lthough an intermediate appellate court's decision shall be conclusive on all questions of fact brought before them on appeal or error, the Texas Court of Criminal Appeals has authority to determine questions of law, including the standard of review that an intermediate appellate court must use in conducting factual review." (internal citations omitted)). Therefore, because we are bound to follow the Court of Criminal Appeals, we only apply the *Jackson* sufficiency standard of review to complaints styled as legal or factual sufficiency challenges concerning the elements of a criminal offense. *See Brooks*, 323 S.W.3d at 902, 912; *see also Ervin v. State*, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Accordingly, we are not persuaded to consider this argument in this proceeding.

We now move on to Swisher's contention that the evidence supporting the identity element is legally insufficient. Our standard of review is as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319,

99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

In the instant case, Swisher challenges the identity element. The State is required to prove beyond a reasonable doubt that the accused is the person who committed the crime charged. *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd) (citing *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984); *Rice v. State*, 901 S.W.2d 16, 17 (Tex. App.—Fort Worth 1990, pet. ref'd)). Identity may be proven by direct or circumstantial evidence. *Id.* (citing *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Couchman v. State*, 3 S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref'd); *Creech v. State*, 718 S.W.2d 89, 90 (Tex. App.—El Paso 1986, no pet.)). "In fact, identity may be proven by inferences." *Id.* (citing *United States v. Quimby*, 636 F.2d 86, 90 (5th Cir. 1981)); *see Clark v. State*, 47 S.W.3d 211, 214 (Tex. App.—Beaumont 2001, no pet.); *see also Jones v. State*, 900 S.W.2d 392, 399 (Tex. App.—San Antonio 1995, pet. ref'd) (explaining that the jury may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs of life when giving effect to an inference that may reasonably by drawn from the evidence).

In the instant case, Swisher was charged by indictment with continuous sexual abuse of a young child, H.H., and indecency with a child by contact. At trial, H.H., who was thirteen years old at the time of trial, recounted that the sexual abuse occurred every day when she went to Swisher's house when she was five or six years old. H.H. identified Swisher in open court as the defendant in this case, but she did not specifically identify him as the perpetrator of charged offenses. She also recalled that the sexual abuse

involved taking off her pants, sticking his hand in her crotch area, wiggling his fingers, and touching her breasts and occurred in Swisher and his wife's bedroom. According to H.H., this happened "[t]oo many [times] to count."

The State also presented the testimony of H.H.'s pediatric Nurse Practitioner Katie Carranza, who noted that H.H. is very mature and well-spoken for her age and that H.H. told her that "she had been touched inappropriately, and then she said that it was her step-grandfather." H.H. told Nurse Carranza that H.H.'s step-grandfather had touched her private parts for years.

Additionally, H.H.'s mother identified Swisher as her "mom's husband"—or, in other words, her step-father. C.E., H.H.'s sister, identified Swisher as "Bryan," her "step-grandpa," and stated that, on several occasions, Swisher touched her "no-no square" and moved his fingers while the two were in Swisher's bedroom.

And finally, Dr. Soo Battle, a child-sexual-abuse examiner and Medical Advisor at the Advocacy Center for Crime Victims and Children, testified that she conducted a medical exam of H.H., and during the exam, H.H. noted that: "My granddad, Bryan Swisher, he molested me." H.H. informed Dr. Battle that Swisher is her "mom's stepdad" and that he touched her breasts and "no-no" spot with his hands and that his hand were moving when the touching occurred. This happened "more times that [she] can count" over the course of two years and started when she was six or seven years old. H.H.

recounted that the inappropriate touching caused her "no-no" spot to hurt when she urinated.

Based on the foregoing, we conclude that, viewing the evidence in the light most favorable to the jury's verdict, a rational factfinder could have found beyond a reasonable doubt that Swisher was the perpetrator of the sexual abuse alleged in the indictment. *See Johnson*, 673 S.W.2d at 196; *Clark*, 47 S.W.3d at 214; *Roberson*, 16 S.W.3d at 167; *Jones*, 900 S.W.2d at 399; *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Zuniga*, 551 S.W.3d at 732-33. Accordingly, we cannot say that the evidence pertaining to the identity element of the charged offenses is insufficient. *See* TEX. PENAL CODE ANN. §§ 21.02, 21.11; *Jackson*, 443 U.S. at 318-19, 99 S. Ct. 2788-89; *Zuniga*, 551 S.W.3d at 732-33; *Ramsey*, 473 S.W.3d at 809; *Hooper*, 214 S.W.3d at 13. We overrule Swisher's first issue.

## II.     THE ADMISSION OF ALLEGED HEARSAY EVIDENCE

In his second issue, Swisher complains that the trial court abused its discretion by admitting hearsay evidence from Dr. Battle regarding H.H.'s medical exam. Specifically, Swisher argues that the statements made by H.H. to Dr. Battle during the medical exam do not qualify under the hearsay exception for statements made for medical diagnosis or treatment because neither H.H. nor her mother went to Dr. Battle to seek a diagnosis or

treatment, Swisher's identity was irrelevant to the treatment provided, and because the detailed statements were unnecessary for the treatment provided.[1]

The record reflects that H.H. was referred to Dr. Battle by a Detective Derek Thiele of the Waco Police Department and Cybil Humphreys of the McLennan County District Attorney's Office. Dr. Battle recounted that H.H.'s mother indicated that H.H. had trouble sleeping and occasional nightmares. In fact, she was taking medication to help her sleep. Additionally, H.H.'s mother told Dr. Battle that H.H. was having pain during urination about three weeks prior to the examination, which was when H.H. stated the last instance of sexual abuse occurred. In light of this information, Dr. Battle administered a urine test to check for a urinary-tract infection. H.H. also revealed to Dr. Battle that she had nightmares about "demon squirrels," but she denied being depressed,

---

[1] The medical-diagnosis exception to the hearsay rule is outlined in Texas Rule of Evidence 803(4) and provides that:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> . . .
>
> (4) Statement made for Medical Diagnosis or Treatment.
>
> > A statement that:
> >
> > (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and
> >
> > (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause.

Tex. R. Evid. 803(4).

fearful, or angry. Dr. Battle testified that her role in the process was to determine if anything was wrong with H.H.'s body and that the information she gathered was for that purpose. In that vein, Dr. Battle conducted a physical examination of H.H. that included testing for various sexually-transmitted diseases. Later, H.H. told Dr. Battle that Swisher had sexually abused her and then provided details of the sexual abuse.

Assuming, without deciding, that it was error to admit Dr. Battle's testimony about H.H.'s statements under the hearsay exception outlined in Texas Rule of Evidence 803(4), we conclude that the alleged error is harmless. Error in the admission of evidence is non-constitutional error. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018); *see Luna v. State*, 301 S.W.3d 322, 326 (Tex. App.—Waco 2009, no pet.). Under Texas Rule of Appellate Procedure 44.2(b), an appellate court must disregard non-constitutional error unless the error affected the defendant's substantial rights. TEX. R. APP. P. 44.2(b); *see Gerron v. State*, 524 S.W.3d 308, 325 (Tex. App.—Waco 2016, pet. ref'd). A substantial right is affected when the erroneously-admitted evidence, viewed in light of the record as a whole, had "a substantial and injurious effect or influence on the jury's verdict." *Gerron*, 524 S.W.3d at 325. In assessing the likelihood that the jury's decision was improperly influenced, we must consider the entire record, including such things as the testimony and physical evidence admitted, the nature of the evidence supporting the verdict, the character of the error and how it might be considered in connection with other evidence, the jury instructions, the State's theories, defensive theories, closing arguments,

voir dire, and whether the State emphasized the error. *Barshaw v. State*, 342 S.W.3d 91, 94 (Tex. Crim. App. 2011).

In arguing harm, Swisher notes that Dr. Battle's testimony allowed the State to present the sexual-abuse allegations in a more organized manner through the testimony of an experienced expert witness who merely repeated the allegations and explained why there was no physical evidence of sexual abuse. He further contends that the admission of this evidence was harmful "because no witness identified Swisher as the person who committed the alleged offenses."

As shown above, the record includes testimony from the child victim, H.H., regarding the sexual abuse. Such testimony alone is enough to support a conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *see also Abbott v. State*, 196 S.W.3d 334, 341 (Tex. App.—Waco 2006, pet. ref'd); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd). Furthermore, contrary to Swisher's contention, the record contains sufficient evidence from which the jury could infer that Swisher was the perpetrator of the sexual abuse against H.H., especially given the combined testimony of H.H., C.E., H.H.'s mother, and Nurse Carranza. Moreover, we find nothing else in the record that supports Swisher's allegation of harm. In other words, when looking at the record as a whole, we cannot say that the admission of this evidence had a substantial and injurious effect or influenced the jury's verdict. *See* TEX. R. APP. P. 44.2(b); *see also Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App.

1998).  Accordingly, any error in the admission of the complained-of testimony was harmless.  *See* TEX. R. APP. P. 44.2(b).  We therefore overrule his second issue.

### III.    THE TIME-PAYMENT FEE

In his third issue, Swisher contends that the court cost imposed for a time-payment fee under section 133.103(b) and (d) of the Local Government Code is unconstitutional. *See* TEX. LOCAL GOV'T CODE ANN. § 133.103(b), (d).  As such, Swisher requests that we modify the judgments by deleting $22.50 of the court costs assessed.

The cost bill was generated the same day as the judgments on August 19, 2019, but it was not clearly incorporated into either judgment.  The judgments include a blank for "court costs," which states "SEE BELOW."  The judgments also include a section entitled, "Attachment A, Order to Withdraw Funds, is incorporated into this judgment and made a part hereof."  The box next to this section in each judgment is not checked.  Included in the bill of costs is the time-payment fee in the amount of $25.

Regarding the constitutionality of section 133.103(b) and (d) of the Local Government Code, this Court has previously held that these provisions are facially unconstitutional because the collected funds are sent into the general-revenue fund and are not sufficiently related to the criminal-justice system or a legitimate criminal-justice purpose.  *See Simmons v. State*, 590 S.W.3d 702, 710-13 (Tex. App.—Waco 2019, pet. filed) (holding that section 133.103(b) and (d) of the Local Government Code are facially unconstitutional because the collected funds are sent into the general-revenue fund and

are not sufficiently related to the criminal-justice system or a legitimate criminal-justice purpose (citations omitted)).  As such, we sustain Swisher's third issue.

## IV.    CONCLUSION

Because we have sustained Swisher's third issue and concluded that ninety percent of the time-payment fee, as prescribed in section 133.103(b) and (d) of the Local Government Code, is facially unconstitutional, we modify the trial court's judgments to change the time-payment fee from $25 to $2.50.  *See* TEX. CODE CRIM. PROC. ANN. art. 102.073 (providing that, in a single criminal action in which a defendant is convicted of two or more offenses or of multiple counts of the same offense, the court may assess court costs or fees only once against the defendant); *Hurlburt v. State*, 506 S.W.3d 199, 203 (Tex. App.—Waco 2016, no pet.) ("Thus, we presume that the Legislature, in using the phrase, 'in a single criminal action' in article 102.073(a), meant the phrase to be interpreted as 'allegations and evidence of more than one offense . . . [which] are presented in a single trial or plea proceeding,' as stated in *Pharr*.").  We affirm the trial court's judgments as modified.


JOHN E. NEILL
Justice

Before Chief Justice Gray
  Justice Davis, and
  Justice Neill
Affirmed as modified
Opinion delivered and filed December 30, 2020
Do not publish
[CRPM]

